By the Court. Hoffman, J.
The facts of the case upon which the rights of the parties, in my opinion, depend, are these.
The plaintiff’s action is upon' a promissory note made by the defendants, Leggett & Brothers, for the sum of $943.13, to their own order, and endorsed by James H. Benedict & Co., who transferred the same to the plaintiffs. They aver, in the complaint, that, while such note was owned by them, it was accidentally destroyed by fire.
The firm of James H. Benedict & Co. agreed with the plaintiffs, on the 29th of October, 1853, to purchase of them a quantity of rags, at a certain price. The purchasers offered to give in payment, their own note at six months, or the note of Leggett & Brothers (the defendants) at six months, without recourse. After some inquiry, the plaintiffs accepted the last offer, and wrote the following note to Benedict & Co.:
“Hew York, October 29th, 1853.
“ Gents :—We accept your offer of the ninety-five bales of rags, viz., three and three-fourths, six months, Leggett & Bros.’ paper. Please let the bearer know whether we shall turn them out.”
On the same day the plaintiffs made out a bill as follows:
“Hew York, October 29th, 1853.
“ Messrs. J. H. Benedict & Co., bought of Des Arts & Heuser, ninety-five bales of rags, (marks given and price,) $945.13, against six months’ note Leggett & Brothers.”
The goods were delivered on the same day.
The day of this transaction was Saturday. At that time, Ben edict & Co. had in their hands a large amount of the notes of Leggett & Brothers. After the bargain, Benedict & Co. surrendered one of such notes, and replaced it with the one in question, to make the amount correspond with the price of the rags.
This was on Monday or Tuesday—most probably it was Tuesday,, the 1st day of Hovember. On Wednesday, the 2d of Hovember, Benedict & Co. tendered the note to the plaintiffs. They refused to receive it. On Monday, they had heard rumors of Leggett & Brothers being in difficulty. On Tuesday night, Benedict & *158 Co. heard similar reports. Benedict, the witness, admits, that when the note was tendered, there were rumors against the defendants. On Thursday, the 3d of November, they stopped payment.
The note in question was dated the 29th October, 1853, at six months, for $943.13. It fell due the 2d May, 1854.
It was put in a desk in the store of Benedict & Co., on the evening of the 4th of March, 1854, and the store was burnt on the morning of the 5th of that month. The witness, Benedict, states, that the note and the original bill were burnt with it.
Matters thus remained until five or six months after the fire, that is, until August or September, 1854, when, for the first time after the transaction, the plaintiffs made any communication upon the subject. Mr. Heuser, one of them, then asked about the note, and said they must have their pay from somebody; that they should proceed to get their money from some one.
On the 4th of March, 1854, Benedict & Co. executed an assignment to one William H. Leggett, not a member of the firm, of a large number of promissory notes, amounting to over $16,000, upon a consideration paid by him. And on the same day, they entered into a special arrangement as to the note in question, in common with two other notes. In this they recite that there was a suit pending in the Superior Court, in which they were plaintiffs, and Cyrus W. Field and others were defendants, and that they had also had business transactions with Des Arts & Heuser, out of which they were apprehensive that litigation might arise between them, and that the said three notes might be necessary for the purposes of the said action, and of the said apprehended litigation. Therefore it was stipulated that nothing in the instrument should be construed to operate as an absolute assignment of their interest in such three notes, or to prevent any appropriation of the same as they saw fit. If it was necessary to make such appropriation, the consideration received therefor, from William H. Leggett, should be returned to him. A schedule annexed specifies the note now in suit. The consideration paid was thirty cents on the dollar.
Benedict, the witness, and member of the firm, states, that at the time, he told William H. Leggett all about the note—the sale of the plaintiffs, &c.,—that the note did not belong to their firm; that it was the property of the plaintiffs; that they could not sell *159 the note for thirty cents, as they would thereby assume seventy cents. • The note never was given up, or passed to Leggett. It was retained by the counsel, and it appears that the counsel (it being Saturday night) left the notes with Benedict & Co., for safe keeping, on the 4th of March. The store, was burnt, as before stated, on the 5th.
We consider that the questions, some of them of difficulty, which have been discussed, as to the right of property, and the responsibility for property after a tender and refusal, have very little bearing upon the case. It is needless for us to decide the delicate question, whether the plaintiffs were not justifiable, on Wednesday, in .rejecting the note, and resorting to Benedict & Co. for payment of the price. We find here, an agreement to take the promissory note of a third party in payment of goods purchased. We find a positive refusal, upon tender, to take such note. We find, that for five months after the refusal, and three months after the maturity of the note, the seller never applies for it—in effect he persists in his rejection. The purchaser, in our opinion, had then an undoubted right to dispose of the note as he chose. After the refusal, it was at his option, to hold it as bailee, and whenever payment was demanded, to insist upon giving it up as satisfaction; or to appropriate it to his own purposes, and leave the seller to any remedy for the price he might possess. Especially in relation to commercial paper, we conceive that it is prescribed by mercantile facilities, and the needs of business, as a true principle of justice, that such a right should exist. To prohibit the holder of mercantile paper from using it in any form, because it has been rejected by one to whom he had undertaken to transfer it, would be to chain up a species of circulation until the caprice or interest of another shall release it.
Whether,, then, the refusal of the plaintiffs in this case, to take the note of Leggett & Co. was warranted or unwarranted, is immaterial. They did refuse it. For five months they never recalled the refusal. Benedict & Co. had a plain right to part with the note. They could elect to leave the plaintiffs to any action against themselves for the price, dealing with the note as they chose, or to retain the note, to be proffered when an action was brought against them.
Thus, the question in the cause is really reduced to this.—Have *160 Benedict & Co. parted with the note, that is, in such a way as to give a right to it to another, so as to show that the plaintiffs are not the owners, or to show that they are not the absolute owners ?
The question depends upon the agreement and instrument of the 4th of March, coupled with the competent parol testimony as to facts connected with it. It is of much importance to notice, that down to the 4th of March, Benedict & Co. had not exercised the right of treating the note as their own property. On the contrary, Benedict swears that they considered it as belonging to the plaintiffs. Had they passed it away—had they ever made a general assignment of their property—it would have been rightly transferred. But they clearly assumed to hold it down to that time on behalf of the plaintiffs. We thus arrive at the true construction and effect of the instrument of the 4th of March, 1854.
It cannot be disputed that Benedict & Co. retained, under this agreement, the right to the possession of the note, and to extinguish all the claim of William H. Leggett upon it, on repaying the thirty cents advanced. Leggett had but a lien upon it for such repayment by Benedict & Co. The sensible construction of the agreement appears to us to be, that Benedict & Co. reserved the right of saying, We will appropriate this note in payment of the rags, to the plaintiffs, if they claim it. Then we will repay you the advance. The plaintiffs do claim it by the present action. One of the firm sustains the claim. In his own language, the note is used by them on behalf of the plaintiffs. The firm consent to the present action.
The result is, that the plaintiffs have a right to recover in fall, and William H. Leggett is left to reclaim the amount of his advance.
In relation to the question of indemnity, as for a lost note, we are of opinion that it is to be governed by the Revised Statutes entirely. The case of Smith v. Rockwell, (2 Hill, 482,) applies to the simple case of a maker of a note not in fact negotiable, apd actually destroyed. A distinction is to be found, and is a very proper one, between notes negotiable and others. Before the Revised Statutes, it was held, that where a note was lost or destroyed, and the fact did not appear whether it was negotiable or not, the the court would not presume it to have been negotiable; but if it appeared to have been negotiable, the plaintiffs could not have re *161 covered in a court of law. (10 John. Rep. 104; 3 Wendell Rep. 344; 3 Cowen Rep. 303.)
The Revised Statute, (2 R. S. 406, §§ 75, 76,) is limited to negotiable paper, and the indemnity can be given upon recovery of judgment, (12 Wendell Rep. 174.) It is in terms also limited to a lost note or bill.
It would seem, however, that a proffer of indemnity, before commencing a suit, may be required. We understand the case of Smith v. Rockwell, (2 Hill Rep. 482,) to admit of this distinction ; that as it is the right of a maker or endorser to require indemnity before payment, he may impliedly waive it, and does so by omitting to demand it. And in such a case, the statute allows him to obtain it upon the trial.
We consider the rule to be settled, that in a case like the present, of a note not, in fact, negotiable, (as the endorsement here was, doubtless, without recourse,) and when the claim is made by the original parties to whom it was given, the destruction of the note is matter of fact, to go to the jury; and, if established, no indemnity is requisite. Yet, in a doubtful case, it may be that the analogy of the statute as to a lost note, and the rule in a Court of Chancery, may justify the court in requiring it.
Judgment will be for the plaintiffs, for the amount of the verdict, with interest and costs.