ELAM EAVES *vs.* THE PEOPLE'S SAVINGS BANK.

A savings bank paid money on an order, to a person who brought with it the depositor's bank book. It proved that the order was forged and that the bank book had been stolen. The savings bank had a standing rule, on account of the difficulty of identifying its depositors, that any person bringing the bank book of a depositor, should, in the absence of suspicious circumstances, be taken to be the depositor, or to have an order from him; and the book contained, in conspicuous letters on the cover, the following notice: "Caution to depositors. This book should be preserved with great care. If

it should be lost, give immediate information at this office." The by-laws of the bank were also printed on the cover of the book, one of which was as follows: "Payment on deposits shall be made only to the depositor or his order or to his legal representatives, on the presentation of the depositor's book." The depositor had no actual notice of the rule of the bank except what would be conveyed by this by-law and caution. Held, in an action brought against the bank by the depositor to recover the amount paid out on the forged order, that the bank could not avail itself of that payment in defence, and that the plaintiff was entitled to recover.

If the rule had been brought distinctly to the knowledge of the depositor at the time when he made his deposit, by being printed on the bank book or in some other mode, it would have constituted a condition on which the deposit was received by the bank and would have justified the payment on the forged order.

THIS was an amicable submission to the superior court, under the provisions of the statute on that subject, on the following agreed statement of facts.

Elam Eaves, of Hartford, deposited with the People's Savings Bank, of Hartford, on the first day of April, 1857, $118.29; and took a depositor's bank book, in usual form, containing an entry of that amount to his credit. He stated at the time that he was going to Australia, and wished the treasurer to pay out the money to his wife as she might apply for it. Mrs. Eaves, not long after, called with the book and took $40, and afterwards $30, both of which were entered on the book. On the 25th of July, 1857, a young woman called at the bank with the bank book and a written order in a female hand, purporting to be from Mrs. Eaves, requesting the treasurer to pay the bearer $42.70 for her. The person stated that Mrs. Eaves was sick and could not come herself, and had requested her to call and get it for her. The treasurer paid her the money and it was entered on the book. It proved that the order was forged and the money fraudulently obtained by the person who drew it, who was a boarder in Mrs. Eaves' family, and had got possession of the bank book by stealing it from a bureau drawer in which it was kept by Mrs. Eaves, who did not discover the loss until after the money was drawn.

The bank book contained upon the cover the following paragraph, standing prominently by itself: " CAUTION TO

DEPOSITORS. This book should be preserved with great care. If it should be lost give immediate information to this office." The book also contained a copy of the by-laws of the bank of which the fifth was as follows: " Payment on deposits shall be made only to the depositor or to his or her order, or to the depositor's legal representatives, on the presentation of the depositor's book."·

The depositors of the savings bank are numerous, mostly laboring men and women, some of them living in neighboring towns, many of them unable to write or unused to it, and often so little known to the officers that they can not be identified, making it very difficult to detect a forgery of their names, or even an attempt at imposition by a stranger claiming to be a depositor; and the bank has therefore, from the first, adopted the rule of paying to a person who brings the bank book,—regarding the possession of it, in the absence of circumstances exciting suspicion, as reasonable evidence of the genuinness of an order if an order is brought, or of the claimant being in fact the depositor if he pretends to be so. The same rule has long prevailed in the other savings institutions of the city of Hartford, and is of general notoriety, but there is no evidence that it was brought to the knowledge of Mr. Eaves otherwise than by the notices contained in the bank book held by him and above stated.

Eaves now demands the \$42.70 paid out on said forged order, and the parties submit to the court the question whether the savings bank is liable to pay the same.

On these facts the case was reserved by the superior court for the advice of this court.

*Sill,* for the plaintiff, cited 1 Pars. on Cont., 707, and Edwards on Bailments, 66.

*Hooker* and *Nichols,* for the defendants, cited *Warhus* v. *Bowery Savings Bank,* 5 Duer, 67.

ELLSWORTH, J. We discover no question of difficulty in this case. The plaintiff having deposited with the defend-

ants the money demanded, it would seem too clear to need a judicial decision, that he or his duly constituted attorney can alone obtain its repayment. We have looked into the charter and by-laws of the bank to see if there be anything to prevent the application of the principle of the common law to the case, but we find nothing,—certainly nothing that approximates to a legal authority for the payment of the money by the bank on the forged order that was presented.

The charter declares that " all deposits of money received by said corporation shall be used and improved to the best advantage," &c. "and that the principal of such deposit or deposits may be withdrawn by the owner or owners thereof, or by any person or persons duly authorized for said purpose, on giving notice of such intention in writing, and lodging the same with the secretary of the corporation, at least four months previous to withdrawing such deposit or deposits." This previous notice we infer was waived in this case, as it certainly could be by the bank, it being a condition solely for its benefit. Clearly the money could be legally demanded and received of the defendants, only by the depositor or his attorney, or in case of his death, by his executor or administrator. And were it important, we might add that this is the very language of the by-law.

It is said that the defendants are mere bailees of the money, and as such, are responsible only for ordinary care. Suppose this were so, which however we do not admit, it would not help the defendants ; for it would be no excuse for paying the money to an unauthorized person ; and one with a forged authority is no better. We think that the defendants are not bailees, but a banking corporation, with the usual powers and duties of banks, except that they are not a bank of issue and circulation, and the capital is liable to be withdrawn upon notice. They do not take money to be used and held in trust, as is intimated, nor to be specifically restored, more than in any case of a loan of money or a deposit in a bank, but on the contrary they take it and use it as their own, to be restored at all events when called for.

But it appears that the defendants paid this money to a

person who came with the bank book of the depositor and a forged authority. But a forged power of attorney is no power of attorney at all; and the presentation of the bank book alone is of no greater effect; for the book is not negotiable, it may have been stolen and presented by the thief, as was the fact here. The rights of depositors require more security than this. Besides, the book itself denies the legality of the payment, for the by-law of the bank as well as the printed caution to depositors, which appear in the book, point out how and by whom the money shall be drawn. Had the book contained this further notice, that the presentation of the book shall be taken to be full authority for paying the money, the defendants would have had a good defence; for it might be reasonably held in that case, that the bank insisted upon this as a condition of receiving the deposit. Probably the insertion of such a condition would, however, defeat itself, for few people would be willing to deposit money with a bank on such terms. Such a book ought not to be clothed with the character of a blank power of attorney. It is wholly unnecessary to give it this effect and we think it would be improper to do so.

It is said there is great difficulty in conducting this kind of business if more than the book is required as an authority for the payment of the money; that many of the depositors can not write, nor sign a receipt even, so as to identify themselves by their hand-writing; and that as to knowing them personally, or learning their places of residence, when they are shifting them from month to month, is a thing quite impracticable. This may be true, but without some agreement to that effect these inconveniences cannot annul the universally acknowledged and indispensable principle of the common law mentioned above.

It is again said that a general practice of this kind has prevailed among the savings banks of this city, and that this furnishes authority enough to justify the defendants. If this be the general practice it cannot avail here, because this book declares that the money is payable to the depositor or his order, or to his legal representatives, on the presentation

of the book; and further, such a practice cannot of itself alter the general law. Let the rule be inserted in the book and assented to by the depositor, and then it will be a sufficient authority for such a payment.

We advise judgment for the plaintiff.

In this opinion the other judges concurred.

Judgment for plaintiff advised.