JAMES L. McCASKILL vs. THE CONNECTICUT SAVINGS
BANK.

New Haven and Fairfield Cos., Oct. T., 1890. ANDREWS, C. J., CARPEN-
TER, LOOMIS, SEYMOUR and TORRANCE, JS.

A savings bank pass-book, containing entries of deposits, is not negotiable
   by itself, nor upon a written order by the depositor directing the pay-
   ment of the money to the order of a third person.
No depositor can convey to an assignee any greater right in the funds of
   the savings bank than he has himself, and any defense that would be
   good against the depositor would be equally good against his assignee,
   in the absence of facts to create an estoppel in favor of the latter.
A fraudulent check was, with knowledge of its character and with fraudu-
   lent intent, deposited by H in the defendant savings bank, which gave
   him a pass-book with the amount set to his credit.  This pass-book was
   afterwards assigned by H to the plaintiff, who took it for a valuable
   consideration, but without inquiry and after he had reason to suspect
   the fraud.  Held that the bank was not estopped by its entry of the
   deposit from denying its liability to the plaintiff.
The pass-book having been obtained of the bank by fraud, the bank was
   not to be regarded as having issued it.
It is the general rule that where representations are procured by fraud
   there will be no estoppel on the party making them, though made with
   the full intention that they should be acted upon.

[Argued October 28th, 1890—decided March 20th, 1891.]

ACTION by the plaintiff as assignee of a savings bank pass-
book and holder of an order for money, to recover money
represented by it, standing to the credit of the depositor on
the pass-book; brought to the Superior Court in New Haven
County, and tried to the court before *Robinson, J.*  The court
made the following finding of facts.

The defendant is a savings bank chartered by the state
and doing business in New Haven.  On December 23d,
1887, a person introducing himself as Michael Harrison, and
representing that he lived at No. 68 Walnut street, in the
city of New Haven, called at the banking house of the de-
fendant and presented to the teller of the bank for deposit
a check for $1,250, purporting to be signed by one D. D.

Stone, upon the Mercantile National Bank of the city of New York, payable to the order of Michael Harrison. Upon being informed by the teller that so large a sum as $1,250 could not be received by law from one person at one time, he requested that $750 be received in the name of Michael Harrison, and $500 in the name of Thomas Harrison, whom he represented to be his brother.

He having indorsed the check with the name of Michael Harrison, the teller believing his statements and that the check was genuine, received it and gave to him two pass-books, in the ordinary form of savings bank deposit books, the first in the name of Michael Harrison, numbered 29,007, and containing the entry, "1887, Dec. 23—To cash, $750;" the second in the name of Thomas Harrison, and numbered 29,008.

Michael Harrison was not known to any officer of the bank, nor was any identification of him given or required, other than his own statements, upon which and his appearance and manner the bank teller relied as being truthful and honest. The signature of the check was not known to the officers of the bank, nor did they make any inquiry, either at No. 68 Walnut street, or of the Mercantile National Bank, as to the identity of Harrison or as to the validity of the check.

The pass-books contained the following by-law of the bank and form of order.

"Sec. 2. Each depositor shall be furnished with a pass-book containing the by-laws of the bank, in which shall be transcribed his account with the bank, as entered upon the books of the treasurer; and every depositor receiving such a book shall be deemed and considered as assenting to and as bound by all the rules and regulations of the bank. When the deposits are withdrawn the pass-book shall be presented; and no payment shall be made except to depositors, or upon their written order, accompanied in all cases with the pass-book."

The following is the form of order.

This Bank Book must be presented with the Order.

$\text{\$}$_____

(Town and Date.)

_____

Treasurer of The Connecticut Savings Bank of New Haven, pay to _____ or bearer, _____ dollars, on my deposit book, No._____     _____

Witness_____

The check was in fact fictitious and fraudulent, and the person so paying the check to the bank did not live at 68 Walnut street, nor did any person live there named Michael Harrison.

The check was sent by the bank, in its ordinary course of business, to New York city for collection, and was returned protested; and the bank then upon inquiry first became aware that the check was fictitious and fraudulent, and that the man who presented and indorsed it was a swindler.

On the 11th day of January the bank caused notice to be published three days in one morning and one evening newspaper in New Haven, stating that the two books had been fraudulently obtained from the defendant, and warning all persons against buying or negotiating the same, as payment thereon had been stopped.

During the month of January, 1888, and for over three years before, the plaintiff was United States Consul at Dublin, Ireland. In the early part of that month a person calling himself Michael Harrison presented the two deposit books to the plaintiff, at his office in Dublin, and requested him to loan him a sum of money upon the book No. 29,007 as security, and to send the book to New Haven for collection. The man was an entire stranger to the plaintiff. The plaintiff declined to do so, and advised him to go to the Ulster Bank in Dublin, where the plaintiff did business, and have the bank send over one of the books for collection.

The man visited the office of the plaintiff socially several times after the first interview, and before the 27th of January.

On the 27th of January, at the suggestion of the plaintiff, he presented the book No. 29,007 to the Ulster Bank, and applied for a loan upon it. He was a stranger to the Ulster Bank, and the bank declined on that account to make the

desired advance. He then told the bank that the plaintiff would secure the amount he wanted, which was twenty-five pounds. The following arrangement was then made between Harrison, the plaintiff, and the Ulster Bank.

The bank took from Harrison the book No. 29,007, with an order for its collection, which order was as follows:

"DUBLIN, 27th Jan., 1888.
" To Treasurer Connecticut Savings Bank:

"Pay to Messrs. J. J. Stuart & Co., or bearer, seven hundred and fifty dollars (with interest thereon), on my deposit book No. 29,007.        MICHAEL HARRISON.
" Witness: J. L. McCASKILL, U. S. Consul, Dublin."

J. J. Stuart & Co. were the correspondents of the Ulster Bank in New York city.

The plaintiff, upon the delivery of this order and the book to the Ulster Bank, gave to the bank his draft as follows:

" £25.                    DUBLIN, 27th Jan., 1888.
" One month after date pay to my order at the Ulster Bank, College Green, Dublin, the sum of twenty-five pounds.
                    " J. L. McCASKILL.

" MR. MICHAEL HARRISON."

This bill was accepted by Michael Harrison, and was indorsed by the plaintiff, and discounted for Harrison by the Ulster Bank. Since that transaction the plaintiff has not seen or heard of Harrison.

The Ulster Bank at once forwarded the book and order to its correspondents in New York city for collection. On the 9th of February, 1888, the book was presented to the defendant for payment, with the order, by the agents of J. J. Stuart & Co., and payment was refused on the ground of the fraud in obtaining the book. The fact of the refusal of payment by the defendant on this ground was cabled by

J. J. Stuart & Co. to the Ulster Bank, and the plaintiff was then advised of it by the bank.

On the maturity of the bill drawn by the plaintiff, and held by the Ulster Bank (March 1st, 1888), it was paid by the plaintiff. On the return of the deposit book to the Ulster Bank by its New York correspondents, the book was handed by it to the plaintiff.

In the plaintiff's transaction with the Ulster Bank and the man calling himself Michael Harrison, the plaintiff took no steps whatever to ascertain whether the book was a recognized pass-book of the defendant, or whether Harrison was a *bonâ fide* holder of it, or any fact relating to him bearing upon the good faith of his possession of the book. The fraudulent character of the book could have been readily ascertained by a cable inquiry of the defendant. The plaintiff had never held the book until, after actual knowledge of its fraudulent character, it was handed to him by the Ulster Bank. And in the transaction of January 27th, the plaintiff had reason to believe that Harrison's possession of the deposit book was tainted with some kind of fraud or illegality, and that he was not the *bonâ fide* owner of any just claim upon the defendant. The court finds that the plaintiff is not a *bonâ fide* holder of the book and order.

Upon the trial, after the pass-book had been identified as the one issued by the defendant to Michael Harrison, and the handwriting identified as that of the teller of the defendant bank, the defendant offered the testimony of Elliott H. Morse, its treasurer, to show that the check for $1,250 was fictitious, and that no other deposit had been made by Harrison. To this evidence the plaintiff objected, on the ground that the defendant was estopped to deny the representations contained in the book. The evidence was admitted, and the plaintiff excepted.

The plaintiff claimed:

1. That the pass-book constituted a negotiable instrument in law.

2. That if not such in law, it was made such by the contract, as between the original parties and their privies.

3. That the defendant by its negligence was estopped to deny its representation that $750 in cash had been deposited with the defendant by Harrison and would be paid to Harrison's order, saving rights which third parties might have previously acquired.

All of these claims were overruled, and judgment entered for the defendant to recover costs.   The plaintiff appealed.

*G. D. Watrous* and *E. G. Buckland*, for the appellant.

1. The rulings of the court as to the plaintiff's *bona fides* are questions of law and are reviewable.   *White* v. *Brown*, 14 How. Pr., 282, 286 ; *Hamilton* v. *Vought*, 34 N. Jer. Law, 187, 192 ; *Nolan* v. *N. York, N. Hav. & Hartford R. R. Co.*, 53 Conn., 471 ; *Bulkeley* v. *Keteltas*, 6 N. York, 387 ; *Burns* v. *Erben*, 40 id., 466.   If not, they are conclusions of facts from facts specially found, and thus are reviewable.   *Tyler* v. *Waddingham*, 58 Conn., 386 ; *Bennett* v. *N. York, N. Hav. & Hartford R. R. Co.*, 57 id. 425 ; *Dyson* v. *N. York & N. Eng. R. R. Co.*, id., 23 ; *Atwood* v. *Partree*, 56 id., 82 ; *Hayden* v. *Allyn*, 55 id., 289 ; *Mead* v. *Noyes*, 44 id., 489.

2. The plaintiff was not required to investigate as to the *bona fides* of Harrison's possession of the pass-book.   There was no duty resting upon the plaintiff to ascertain " whether the book was a recognized pass-book of the defendant, or whether Harrison was a *bonâ fide* holder thereof, or any fact relating to him bearing upon the good faith of his possession of the book."   His rights were created when he advanced the £25, not knowing or believing that Harrison's possession was fraudulent.   The doctrine adopted by this court is that good faith rather than diligence is the standard by which a holder's right is determined, and diligence or want of it is immaterial except so far as it legitimately tends to establish or rebut the claim of a *bonâ fide* possession of the paper.   *Ladd* v. *Franklin*, 37 Conn., 53, 64 ; *Hamilton* v. *Vought*, 34 N. Jer. Law, 192.   The court in *Ladd* v. *Franklin* disapproves the doctrine laid down in *Hall* v. *Hale*, 8 Conn., 336.

3. Is the pass-book with the accompanying order negotia-

ble? The pass-book, with the order, bears a close resemblance to those instruments which are in law deemed negotiable; notably so to certificates of deposit. In the absence of decisions upon this point we must therefore reason from the analogies presented in the cases of certificates of deposit. A bank issuing a certificate of deposit in substance says that a certain amount of money has been deposited with it, payable to the depositor or order upon return of the certificate. If a pass-book means anything at all, it means that the amount of money mentioned therein has been deposited in the bank issuing it, payable to the depositor or order upon the return of the book accompanied by the form of order therein prescribed. A certificate of deposit is negotiable. *Kilgore* v. *Bulkley*, 14 Conn., 383; *Miller* v. *Austin*, 13 How., 228; *Fells Point Sav. Ins.* v. *Weedon*, 18 Md., 320. Why then is not a pass-book? Both are intended to denote the indebtedness of the bank to the depositor, *and both are intended to pass from hand to hand.* Certainly if not negotiable by the law merchant, it is at least so as to the parties herein, by virtue of the contract between them and those in privity with them.

4. But whether or not the pass-book was negotiable, the defendant is as to the plaintiff estopped to deny the representation contained in it, that there was $750 deposited with it, subject to the order of Michael Harrison. The elements here present are sufficient to constitute an estoppel *in pais*, to wit:—1. A false representation. 2. Ignorance of the truth, the result of inexcusable negligence. 3. The plaintiff relying on the representation and being ignorant of the facts. 4. The representation having been made with the intention that it should be acted upon. 5. The plaintiff having been induced to act upon the representation to his prejudice. 7 Am. & Eng. Ency. of Law, 12; *Roe* v. *Jerome*, 18 Conn., 138; *Preston* v. *Mann*, 25 id., 128; *Armour* v. *Mich. Cent. R. R. Co.*, 65 N. York, 122; *Bank of Batavia* v. *N. York, Lake Erie & West. R. R. Co.*, 106 id., 199. As to the first element, there is no dispute that the representation was a false one. As to the second element, we submit that

the omission of the defendant *even to attempt* to ascertain the genuineness of the signature on the check, to investigate as to the responsibility of the maker and payee, or to inquire at Harrison's pretended residence before issuing the pass-book, was inexcusable negligence. As to the third element, upon the facts found there never was any notice to the plaintiff of the forged check or of the falsity of the representations contained in the pass-book. The advertisement in the newspapers was not such notice unless actually received by him, and there is no claim that at the time of the transaction he had ever seen or heard of the advertisement. *Bank of U. States* v. *Sill*, 5 Conn., 112. Nor do the facts found justify the conclusion that there was any fraud or illegality from which such knowledge might be inferred. And even if the plaintiff had means of knowing the falsity of the matter, he was justified in acting upon the positive representations contained in the pass-book. *Watson* v. *Atwood*, 25 Conn., 320. As to the fourth element, there can be no doubt but that this pass-book, in common with other pass-books, was issued by the defendant with the intention that it should evidence the deposit of money, and that such deposit under prescribed rules might be withdrawn or transferred. Section two of the by-laws and the "form of order" clearly establish this intention. As to the fifth element, the plaintiff *did* rely upon the representation contained in the pass-book and upon nothing else. What else could he have relied upon? The finding that the plaintiff advanced £25, and this suit itself, are the best proofs that such reliance was of a character to result in substantial loss if the plaintiff is not permitted to enforce the estoppel. Even though the defendant did not intend to mislead the plaintiff, it is enough if the declaration was calculated to and did in fact mislead another acting in good faith and with reasonable diligence. It is good law and good sense that of two innocent parties, he whose acts have caused the loss must bear it. *Moore* v. *Metro. Nat. Bank*, 55 N. York, 47 ; *Armour* v. *Mich. Cent. R. R. Co.*, 65 id., 121 ; *Blair* v. *Wait*, 69 id., 116. This doctrine of estoppel applies independently of the

question of negotiability. It has grown up and has become firmly fixed in our law in the cases of transfers of stock, warehouse receipts, bills of lading, elevator receipts and non-negotiable notes. In every transaction where parties contemplate, or where usage supposes them to have contemplated, the possibility of transfer, this doctrine applies. Pomeroy's Remedies, § 160 *et seq.; Bridgeport Bank* v. *N. York & N. Hav. R. R. Co.*, 30 Conn., 275; *Winton* v. *Hart*, 39 id., 20; *McNeil* v. *Hill*, 1 Woolw., 96; *N. York, N. Hav. & Hartford R. R. Co.* v. *Schuyler*, 34 N. Y., 52; *McNeil* v. *Tenth Nat. Bank*, 46 id., 329; *Armour* v. *Mich. Cent. R. R. Co.*, 65 id., 123; *Bank of Batavia* v. *N. York, Lake Erie & West. R. R. Co.*, 106 id., 200; *Babcock* v. *People's Sav. Bank*, 118 Ind., 212; *Joslyn* v. *St. Paul Distilling Co.*, 46 N. W. Rep., 337.

*C. R. Ingersoll*, for the appellee.

LOOMIS, J. Upon the trial of this case, and upon the facts contained in the finding, the plaintiff's contentions relative to five questions were overruled by the court, and furnish the only foundation for this appeal. But as four of the questions embrace only two subjects, the questions for our review may well be reduced to three, as follows:—

First. Is the savings bank pass-book upon which the suit is predicated a negotiable instrument?

Second. Is the defendant bank estopped from showing that the seven hundred and fifty dollars which appears on that book to the credit of Michael Harrison, was in fact never deposited with the bank, nor any part of it?

Third. Did the court err in holding that the plaintiff was not a *bonâ fide* holder of the pass-book?

1. The first question we are constrained to answer in the negative. The pass-book was not negotiable by itself, nor by virtue of the written order signed by the pretended depositor directing payment to J. J. Stuart & Co. or bearer. In *Eaves* v. *People's Savings Bank*, 27 Conn., 229, the bank undertook to defend against the suit in favor of a depositor to recover the money deposited, upon the ground that the

amount had been paid in good faith to a person who brought the original pass-book to the bank, accompanied with an order good on its face, though in fact forged.   This court held that the forged power of attorney was no power, and that the presentation of the book itself had no greater effect, because it was not negotiable.   There was not a very full discussion of this point, but the court held that the rights of the depositors would be very insecure if the pass-book was held negotiable.

It may be suggested that if the book was accompanied with a genuine order for the payment of the money the rights of the depositor could not be affected, and that therefore the reasoning could not apply to the case at bar ; but if we concede that the rights of the particular depositor who had given a genuine order to pay the money to another would not be rendered insecure by holding the instrument negotiable, yet it would seriously affect the rights of the depositors in their relation to each other and to the assets of the bank. A reference to some decisions of this court in respect to these relations will render the point more clear.   In *Coite* v. *Society for Savings*, 32 Conn., 173, it was held that savings banks were " incorporated agencies for receiving and loaning money on account of the owners ; that they have no stock and no capital ; and that they are merely places of deposit where money can be left to remain or be taken out at the pleasure of the owner."

In  *Osborn* v. *Byrne*, 43  Conn., 155, it  was  held  that " a savings bank is an agent for the depositors, receiving and loaning their money ; and its losses are their losses, and are to be borne by them equally, according to their interest.   The depositors in savings banks bear the same relation to each other and to the assets of the bank that stockholders in other monetary institutions do to each other and to the property of the bank."   In *Bunnell* v. *Collinsville Savings Society*, 38 Conn., 203, the defendant bank having met with a loss equal to twenty-four per cent of the deposits, the directors reduced the amount of each depositor's credit in that proportion.   In an action by a depositor to recover of the bank the amount so

deducted, it was held that the defendant was merely the agent of the plaintiff to receive and hold his money, and that the loss was occasioned by his own act through the instrumentality of his agent, and that he could not recover. Now suppose in the last case the plaintiff, before or after the act of the directors reducing the amount of the deposits, had sold his book and given the proper order to some *bonâ fide* purchaser for full value, and the latter had brought such a suit against the bank to recover the original deposit in full. Could he recover any better than the original depositor? If he could, then the act of one depositor could injuriously affect the rights of all the others, for they would have to bear the additional reduction in consequence of paying one in full. It seems to us that no principle can be accepted which admits of such inequality and injustice, and it is contrary to the principles already adopted by this court in the decisions referred to.

In the case at bar, by reason of fraud, forgery and falsehood, Harrison obtained two pass-books from the bank, upon which appeared credits amounting to twelve hundred and fifty dollars, when in truth nothing had been contributed to the funds of the bank. If by assigning the books he made this fraud successful, the amount, of course, is virtually to be paid by the honest depositors. It is certain that Harrison, in his own name, could recover nothing at all in a suit against the bank, for he contributed nothing to its deposits. We think he should not be allowed by assigning his book to convert nothing into something, but that the nature and purpose of savings banks, and the relation of depositors to each other, as well as their mutual security, all require the application of the principle that no depositor can convey to another any greater right in the funds of the bank than he has himself, and that any defence on the part of the bank which is good against the original depositor, is equally good against his assignee, unless there are facts to create an estoppel.

The argument in behalf of the plaintiff founded upon an assumed analogy between certificates of deposit issued by

commercial banks and the pass-books issued by savings banks, is fallacious, for there is no such analogy. The two kinds of banks are created for widely different purposes. The former must have a capital of their own, and the purpose for which they exist is to facilitate commercial transactions over a wide territory, while the latter have no capital, and hold no relations to commerce; are neither adapted nor designed to aid commercial transactions, have a local and limited field for their operations, and hold no relation to any persons except their depositors and those to whom the depositors' money has been loaned. The purpose of the certificate issued by a commercial bank is to enable the person receiving it to obtain credit in the public markets and to carry his funds safely to remote places. On the other hand the savings bank pass-book is not issued with any design to induce third persons to give credit to the holder, but its sole purpose is to put in a shape convenient for the depositor and the bank, a statement of the accounts between them, and the order about which so much was said in argument is, in contemplation of the law, the mere appointment of some person as agent for the depositor to receive the money. In *Eaves* v. *People's Savings Bank, supra,* it is well termed " a power of attorney." By this we do not of course intend to have it implied that the depositor cannot sell his right to the money. Like any other non-negotiable chose in action it may be sold, subject to the equities and defenses between the original parties.

But the plaintiff further contends that the book, with or without the order, was made negotiable by contract. We are not quite sure that we apprehend the force of this point as it lay in the mind of counsel. There was no transaction with any one but Harrison, and by reason of his fraud that was no contract at all, and besides, as it is for the law to declare the negotiability of instruments, we do not see how the mere contract of the parties can be effectual to this end.

In further confirmation of the result we have reached that the savings bank pass-book is not negotiable, we refer to the following well considered cases. *Commonwealth* v.

*Reading Savings Bank*, 133 Mass., 16; *Smith* v. *Brooklyn Savings Bank*, 101 N. York, 58; *Witte* v. *Vincenot*, 43 Cal., 325.

In *Witte* v. *Vincenot*, it was held that "the pass-book of a savings bank was an account kept between the bank and the depositor,  *  *  * showing the business transactions of the parties with each other.  *  *  * It is not of itself a negotiable instrument, nor could any mere agreement of the parties to it have the effect to invest it with that character in a commercial sense. In this respect the account shown in the pass-book is not to be distinguished from the account of a merchant or tradesman kept with his customer in the same way, nor would the agreement of the parties to such account, that the account itself might be transferred to order, have any more effect upon the rights and remedies of any third party in the one case than in the other.  *  *  * That a negotiable instrument may be transferred to order is clear; but it does not follow that every instrument which may be transferred to order is thereby necessarily become a negotiable instrument. A collateral agreement between the parties that an instrument in writing, not negotiable, might be transferred by the holder to order, would not alter the character of the instrument itself."

2. We come now to the question whether, upon the facts that appear in the finding, the defendant is estopped from showing that the sum appearing on the book to the credit of Harrison was in fact never deposited.

The precise claim of the plaintiff under this head is that the defendant was estopped by its negligence, which impliedly concedes that this is the one controlling fact to create the estoppel. But negligence on the part of the defendant is a fact not found by the court, and without such a finding there is no foundation at all for the plaintiff's claim. There was no specific duty resting upon the bank which, being omitted, constituted negligence as matter of law. There are doubtless facts and circumstances which as evidence would tend to show negligence, but they failed to convince the trial court of the fact, and so they amount to nothing

for the purposes of this review.  This alone defeats the claim of estoppel; but there are other essential elements wholly wanting.  The only representation on the part of the defendant was the entry contained in the pass-book, which was not made with knowledge of the material facts on the part of the defendant, nor was the party to whom it was made ignorant of the truth.  The pass-book was obtained from the bank by gross fraud, and therefore it was not in law issued by the defendant bank.  And where representations have been procured by fraud, except under very peculiar circumstances—such, for instance, as representations directly affecting the currency of negotiable paper, there will be no estoppel upon the party making them, though made with the full intention that they should be acted upon. But here there was no such intention.  Bigelow on Estoppel, 2d ed., 450; *Wilcox* v. *Howell*, 44 N. York, 398; *Holden* v. *Putnam Fire Ins. Co.*, 46 id., 1; *Calhoun* v. *Richardson*, 30 Conn., 210; *Sinnett* v. *Moles*, 38 Iowa, 25.

Then, in addition to all these insuperable objections to the plaintiff's claim, we have the fact that the plaintiff himself was guilty of negligence and is not a *bonâ fide* holder of the pass-book.

3. But here the plaintiff claims that the court erred in finding that the plaintiff was not a *bonâ fide* holder of the pass-book.  The fact was distinctly alleged in the complaint that he was a *bonâ fide* holder, and denied in the answer— presenting a distinct issue of fact, which the court upon all the evidence found adversely to the plaintiff.  We think the finding is conclusive on this point.

There was no error in the judgment complained of.

In this opinion the other judges concurred.