agreement of a religious corporation cannot be enforced, without proof of authority in the person executing the agreement to execute the same in the name of the corporation, or without showing ratification by the corporation with knowledge of all the facts.

The contention of the defendant in this case is to the effect that, if the treasurer of a religious corporation should in fact borrow money to pay indebtedness incurred for the legitimate purposes of the corporation, and the corporation should thereafter use the money in payment of such indebtedness, they would not be required to repay the same, if the board of trustees of the corporation, at the time they used the money, were not aware of the fact that the moneys were the proceeds of a loan, and not a contribution. No authority has been called to my attention holding any such doctrine. It is contrary to every rule of law and equity. There is no evidence in this case to estop the plaintiff from demanding a return of the money. The dire consequences to religious corporations of applying this rule of law applicable to ordinary business transactions is imaginary, rather than real. Money put into a contribution box is a gift, as a matter of fact, and not a loan. The fact that the money must now be returned does not put the church corporation in any worse position than it was in before the accounts were paid with the money borrowed. The debtor only has been changed. If money is in fact loaned, a religious corporation cannot repudiate the authority of the treasurer in borrowing the money, and still retain the money. The money should be returned. Plaintiff is entitled to judgment for the four last items mentioned in the complaint (being the items not barred by the statute of limitations), together with interest on such items from the time when the same were severally advanced.

Decision and judgment may be prepared accordingly, with an order for an extra allowance of 5 per cent., and, if not agreed upon as to form by the counsel for the respective parties, the same may be settled before me at my chambers at any time on two days' notice.

---

(28 Misc. Rep. 251.)

MILLS v. ALBANY EXCH. SAV. BANK et al.

(Supreme Court, Trial Term, Albany County. March, 1899.)

1. LOST INSTRUMENTS—INDEMNITY—BONDS—NONNEGOTIABLE INSTRUMENTS.
    2 Rev. St. p. 406, pt. 3, c. 7, tit. 3, §§ 75, 76, and Code Civ. Proc. § 1917, regulating procedure in suits on lost instruments, and requiring tender of bond of indemnity, has application only to negotiable instruments; hence tender of indemnity bond is not a prerequisite to an action on a lost nonnegotiable instrument.

2. SAVINGS BANKS—PASS BOOKS.
    The pass book of a savings bank is not a negotiable instrument.

3. SAME—RULES—ASSENT OF DEPOSITOR.
    In the absence of rules assented to by its customers, a savings bank is to be governed by the same legal principles applicable to other moneyed institutions.

4. SAME—PAYMENT OF DEPOSIT.
    A rule of a savings bank requiring the production of a pass book on withdrawal of a deposit is for the benefit of the bank.

**5. SAME—LOST PASS BOOKS—REASONABLENESS OF REFUSAL TO PAY.**

A by-law of a savings bank, providing that, "in the case of lost books, the bank will decide as to the persons to whom payment shall be made," does not authorize a refusal to pay unless the book is presented or adequate indemnity given, where notice of the loss of the book was given more than seven years before the commencement of action, and no claim had been made for the deposit, except by the depositor and her executor.

Action by Charles H. Mills, as executor of the last will and testament of Deborah G. P. Williams, deceased, against the Albany Exchange Savings Bank, Jennie P. Williams, and Mary L. Sanford. Judgment for plaintiff.

In July, 1875, one Deborah G. P. Williams opened an account with the defendant the Albany Exchange Savings Bank by making a deposit therein. At the time of opening said account said Deborah G. P. Williams received from said bank a pass book, containing a copy of the act incorporating the bank and also a copy of its by-laws. From time to time thereafter she made further deposits therein, which were entered in said pass book, and from time to time she withdrew money from said bank, which withdrawals were also entered in said pass book. The by-laws of the defendant relating to the pass book and the withdrawal of money from said bank are as follows:

"(7) Every deposit shall be entered on the books of the bank, and also in a pass book furnished to the depositor; and no money whatever shall be drawn out without the depositor presenting said pass book, and allowing such sum as is drawn out to be entered therein."

"(12) Every depositor, on receiving his or her pass book with these by-laws printed therein, shall be considered as assenting to them, and shall be bound by them."

"(14) Although the bank will endeavor to prevent frauds on its depositors, yet all payments to persons producing the pass book issued by the bank shall be valid payments to discharge the bank. In the case of lost books, the bank will decide as to the person to whom payment shall be made."

Some time prior to 1890 the said Deborah G. P. Williams lost her said pass book, and the bank was notified of such loss in the year 1890. Deborah G. P. Williams died at the city of Albany, N. Y., on or about the 1st day of May, 1893, leaving a last will and testament, which has been duly admitted to probate, and the plaintiff, Charles H. Mills, was appointed executor of such last will and testament, and duly qualified as such executor. At the time of the death of said Deborah G. P. Williams her account in said bank amounted to the sum of $3,000, in addition to the interest credits thereon from April 1, 1889. No money has been withdrawn from said account since the loss of said book in or prior to the year 1890. Diligent search has been made for said pass book, but the same cannot be found, and the loss of said pass book is admitted. Prior to the commencement of this action the plaintiff duly demanded payment of said account to him as such executor, and said bank refused to pay the account to the plaintiff without the presentation of said pass book, or the furnishing by said plaintiff of satisfactory indemnity. This action was then commenced. The defendants other than the Albany Exchange Savings Bank are the only children and next of kin of Deborah G. P. Williams, deceased.

Charles F. Bridge (Peter Delaney, of counsel), for plaintiff.

John De Witt Peltz, for defendant Albany Exch. Sav. Bank.

CHASE, J. The provisions which were included in the Revised Statutes (2 Rev. St. p. 406, pt. 3, c. 7, tit. 3, §§ 75, 76) and the present provision of the Code of Civil Procedure (section 1917) were designed to take the place of the ancient rule denying jurisdiction in law in actions on lost negotiable instruments, and requiring all suits upon lost negotiable instruments to be brought in equity, where the

court would have power to require suitable indemnity to the defendant in the action. An action can now be brought upon such a lost instrument, and a recovery had, upon complying with the provisions of such section of the Code of Civil Procedure. The statute expressly relates to a negotiable promissory note or bill of exchange. It does not in any way relate to a nonnegotiable instrument. In a suit on a lost instrument, it is not necessary to give or tender a bond of indemnity unless the lost instrument sued upon is negotiable. Hinsdale v. Bank, 6 Wend. 379. See note. Blade v. Noland, 12 Wend. 173; Pintard v. Tackington, 10 Johns. 103; Rowley v. Ball, 3 Cow. 303; Des Arts v. Leggett, 5 Duer, 156; Id., 16 N. Y. 582; Wright v. Wright, 54 N. Y. 437; Terwilliger v. Terwilliger (Co. Ct.) 27 N. Y. Supp. 284.

The pass book of a savings bank is not a negotiable instrument. Kummel v. Bank, 127 N. Y. 488, 28 N. E. 398; Smith v. Bank, 101 N. Y. 58, 4 N. E. 123; Allen v. Bank, 69 N. Y. 314; Beaver v. Beaver, 53 Hun, 258, 6 N. Y. Supp. 586; McCaskill v. Bank, 60 Conn. 300, 22 Atl. 568.

The banking law provides:

"The sums deposited with any savings bank, together with any dividends or interest credited thereto, shall be repaid to such depositors respectively, or to their legal representatives, after demand, in such manner and at such times and after such previous notice and under such regulations as the board of trustees shall prescribe." Section 113.

The banking law also provides:

"No savings bank shall make or issue any certificate of deposit, * * * or pay any interest or deposit, or portion of a deposit, or any check drawn upon itself by a depositor, unless the pass book of the depositor be produced and the proper entry be made therein, at the time of the transaction. The board of trustees may by their by-laws provide for making payments in cases of loss of pass book or other exceptional cases where the pass book cannot be produced without loss or serious inconvenience to depositors. * * *" Section 122.

Under these provisions of the banking law, such reasonable by-laws regulating the withdrawal of money may be made and enforced as the board of trustees of a savings bank may deem to the interest of the bank. Such provisions of the by-laws are evidence of the contract between the bank and its depositors. The pass book is simply evidence of the deposit. Banking Law, § 113. In the absence of any rules assented to by its customers, a savings bank is to be governed by the same legal principles applicable to other moneyed institutions. Allen v. Bank, 69 N. Y. 314. A provision in the by-laws of a savings bank to the effect that, in case a pass book is lost or destroyed, the deposit shall not be repaid, unless the bank shall first receive satisfactory indemnity, is a reasonable provision; and, when it is so provided in the by-laws, such provision becomes a part of the contract between the bank and its depositor, and should be, and is, enforced as such by the courts.

An examination of the authorities cited by the defendant bank, holding that a savings bank is not bound to pay a deposit to a depositor without production of the book, or satisfactory indemnity, will show that such decisions are based upon the contract between

the depositor and the bank, or by reason of some peculiar facts or circumstances applicable only to the case so decided. The by-laws of the defendant bank in terms provide that no money whatever shall be drawn out without the depositor presenting the pass book. The provision requiring the production of the pass book at the time of the withdrawal of any part or all of the deposit is for the benefit of the bank. The simple fact that a pass book is produced is not sufficient to justify a savings bank in paying a deposit. The bank must use reasonable care and diligence to ascertain that the person presenting the pass book is in fact the depositor, or a person legally entitled to receive the deposit. In this case it is impossible for the depositor or any other person to produce the pass book. It is admitted that the pass book has been lost, and cannot be found after diligent search. The by-laws of the defendant bank recognize that it may become impossible for the depositor to produce the pass book. The provision relating to lost pass books is as follows:

"In the case of lost books, the bank will decide as to the person to whom payment shall be made."

This provision of the by-laws is a part of the contract in this case, but it does not mean that the bank can decide not to pay the deposit to any person, or that it will not pay the deposit without adequate indemnity. The bank has had knowledge since 1890 that the pass book is lost, and no claim has been made for the deposit, except by the depositor and the plaintiff, as her executor; and its decision refusing to pay the deposit to the executor of the last will and testament of the depositor is unreasonable.

The plaintiff is entitled to judgment in the sum of $3,900, with interest thereon from September 10, 1897, besides costs; and a decision and judgment may be prepared accordingly.