## LOUIS SCHAEFER *vs.* WILLIAM N. SPEAR, EXECUTOR.

*Trust in Bank Account—Evidence—Order on Bank—Legatees as Witnesses—As Parties—Representation by Executor.*

Where plaintiff's decedent had opened a bank account with her own money "in trust for herself and" defendant, "joint owners, subject to the order of either, the balance at the death of either to belong to the survivor," *held* that the proof as to a

declaration by decedent and the conduct of decedent and defendant showed that an irrevocable trust was not intended, but that defendant's name was joined with that of decedent merely for reasons of convenience. pp. 624, 625

A savings bank was authorized to make payment on an order signed by the owner of the deposit with her mark, duly attested, on presentation of the order with the deposit book. p. 625

Legatees under a will were not incompetent as witnesses, under Code, art. 35, sec. 3, in a suit between the executor and another, involving the question whether testator owned a certain deposit account at the time of her death, to testify as to statements by testator, they not being parties to the cause, and the will not being involved in the issue to be decided. pp. 626, 627

The title of legatees under a will devolving only through the administration of decedent's estate, and the executor being fully qualified and empowered to assert and protect the interests of the estate, it was unnecessary to join the legatees in a suit involving the decedent's ownership of a particular fund. p. 627

*Decided June 29th, 1925.*

Appeal from the Circuit Court No. 2 of Baltimore City (STANTON, J.).

Bill of interpleader by the Central Savings Bank of Baltimore, under which a decree was passed requiring the claimants of the fund in question, William N. Spear, executor of the will of Hattie B. Burton, deceased, and Louis Schaefer, to litigate between themselves the ownership of the fund. From a decree in favor of the executor, said Schaefer appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*John M. Lyell,* with whom were *Sadtler & Lyell* on the brief, for the appellant.

*Allan Cleaveland,* for the appellee.

URNER, J., delivered the opinion of the Court.

A deposit of $3,585.58 in the Central Savings Bank of Baltimore, to the credit of Hattie B. Burton at the time of her death, is the subject of this litigation. The account was opened on February 1st, 1924, with funds transferred from one in the same bank which stood in the name of Hattie B. Burton "in trust for herself and Louis Schaefer, joint owners, subject to the order of either, the balance at the death of either to belong to the survivor." The money which had been so deposited was derived, on September 27th, 1923, from an account which had been opened fourteen years previously in the name of Hattie B. Burton in trust for herself and her husband, under terms identical in other respects with the entry just quoted. Mr. Burton died on September 20th, 1923. The validity of the withdrawal of the funds by Mrs. Burton, from the account in her name in trust for herself and Mr. Schaefer, is disputed by him on the ground that the trust declared as to the deposit was irrevocable, that the order for the withdrawal is not shown to have been duly executed, that Mrs. Burton's transfer of the fund to her sole credit in the bank, simultaneously with the execution of her will disposing of it as part of her estate, was induced by undue influence, and that she was then mentally incapable of executing a valid deed or contract. Because of Mr. Schaefer's objection, the bank refused to pay the fund to the executor of Mrs. Burton's will, and filed a bill of interpleader upon which, after answers were filed, a decree was passed requiring the claimants to litigate between themselves in that proceeding the question as to the ownership of the fund, the executor being designated as plaintiff and Mr. Schaefer as defendant. The final decree sustained the executor's claim, and Mr. Schaefer has appealed.

Mrs. Burton had no relatives, according to her proved declarations. During her husband's last illness, and after his death, Mr. Schaefer, who had been their friend for many years, was very kind and helpful. He invited Mrs. Burton to make her home with him and his wife in their rooms in

an apartment building. The invitation was accepted. After living there four months, during part of the time paying four dollars per week for her board and lodging, Mrs. Burton left Mr. Schaefer's apartments on January 28th, 1924, and went to live with her friend, Miss Wells. The opening of the bank account in her name as trustee for herself and Mr. Schaefer occurred within a few days after she became an inmate of his home, and the transfer of the account to her own name exclusively was made three days after her departure. The evidence shows that Mrs. Burton was not comfortable while she was living in Mr. Schaefer's apartments. It was necessary for her to sleep in the living room or in the kitchen, the only bedroom being occupied by Mr. Schaefer and his invalid wife. A short time before Mrs. Burton's removal, Mr. Schaefer became ill, and Mrs. Schaefer's sister, who came to assist in the nursing, had to be provided with a sleeping place in the living room. It appears from the testimony that Mrs. Burton was aggrieved by a suggestion, with which she believed Mr. Schaefer to be in sympathy, that she enter a home for aged persons. While Mrs. Burton was seventy-nine years of age, and her health was impaired by a serious disease of the heart, she was in the habit of going out daily to visit her friends, and at the time of her removal from Mr. Schaefer's apartments she went to the rooms of Miss Wells unattended. She died there suddenly on February 3rd, 1924. By her will, executed on the day of the transfer of the bank account to her name alone, she bequeathed five hundred dollars to Miss Wells, her "dear friend," and the same amount to Mrs. Sadie E. Wagner, who was described in the will as having been "more than a daughter" to the testatrix, and the residue of the estate to her "friend," J. Wellington Parris, with the understanding that the sum of $50 be used until exhausted in providing flowers to be placed on the grave of her husband and herself annually. The appellee, William N. Spear, was named in the will as executor. In addition to the bank deposit in

dispute, the estate of Mrs. Burton included only some furniture of small value.

The only evidence in the record as to Mrs. Burton's reason for joining Mr. Schaefer's name with her own in the bank account entry consisted of her declarations, as narrated by witnesses, that it was done in accordance with his suggestion in order to serve her own convenience. After that change in the account was effected, Mr. Schaefer had the custody of the bank book and also of some cash which Mrs. Burton had kept for current use. It was testified that she expressed to other friends her dissatisfaction with the possible control which Mr. Schaefer might exercise over the fund on deposit. The bank book and cash held by Mr. Schaefer were returned to Mrs. Burton about the first of November, 1923. In regard to the return of the bank book and money, the testimony of Mr. Schaefer was partly as follows: "I gave her the bank book about the first of November, and the reason—if I may be permitted to state the reason—I gave it to her, she came home one afternoon and she says, 'I am getting tired of going around; every one wants to know how much money I have got in bank, and it seems like I would burn the money up before I would give it to any of them,' and I went into the bedroom, at my desk, and brought out the money and bank book and told her to keep it, I did not want anybody's money that would come home and talk about their friends as thieves. * * * Q. Did you have possession of that bank book at any time after that * * *? A. No, sir. Q. Did not have it in your possession at all? A. No, sir; she locked it up in her little box she had herself."

On November 19th, 1923, Mrs. Burton personally withdrew from the bank account the sum of $200. There were no further withdrawals until the deposit was transferred to her sole credit and control.

The proof in the case as to the declaration of Mrs. Burton and as to the conduct of herself and Mr. Schaefer, with respect to the bank account, prevents the adoption of the view that the creation of an irrevocable trust was intended. It

was simply for Mrs. Burton's convenience that the name of
Mr. Schaefer was joined with her own in the entry on the
banks records. Any interest which Mr. Schaefer, according
to his own belief, might have had in the fund, was definitely
relinquished when he returned the bank book to Mrs. Burton
under the circumstances and with the statement to which he
testified. The decision in *Coburn v. Shilling,* 138 Md. 177,
controls the present case upon the question as to whether an
irrevocable trust of a bank deposit should be enforced con-
trary to the proved intention of the person by whom the
nominal trust was indicated. In that case the account was
opened in a form precisely like the one now under consider-
ation, but upon the evidence it was held that the creation of
a trust was not designed. It was the evident purpose of Mrs.
Burton to retain control of her money on deposit, and her
right to do so was recognized by Mr. Schaefer and was ac-
tually exercised. By the terms of the ostensible trust it was
only the balance in the account at the death of either to
which the survivor was to be entitled (*Milholland v. Whalen,*
89 Md. 218), and there was in fact no balance in the account
when Mrs. Burton died, because as permitted by the terms of
deposit, she withdrew the whole fund in her lifetime.

The order withdrawing the money from the former ac-
count, with a view to its deposit to her individual credit, was
signed with her mark, as she was then too nervous to write
her name. The execution of the order was duly attested. A
similar order, signed with Mrs. Burton's mark, and bearing
the signature of two witnesses, had been sent to the bank, but
the one actually used in making the transfer had been sub-
stituted at the bank's request. It accepted the order as pre-
sented with the deposit book, and it was fully authorized to
make the payment thus demanded. *Frentz v. Schwarze,* 122
Md. 12.

The theory that the transfer of the bank deposit to Mrs.
Burton's sole account was procured by undue influence is
predicated in part upon the fact that she contemporaneously
executed the will to which we have referred. But there is

no evidence tending to prove that either act was accomplished otherwise than by the exercise of Mrs. Burton's independent volition, or that the beneficiaries of her will, or any one connected with its preparation or execution, sustained any such confidential relations with her as to raise a presumption against the validity of the transactions. Affirmative and uncontradicted testimony shows that she desired and directed the transfer of the bank deposit to her own exclusive control and that she personally instructed the draftsman of the will as to the provisions which it contained.

The proof in support of Mrs. Burton's mental capacity is convincing. The physician who attended her on the day of the execution of her order to the bank and of her will testified that while she was then feeble and nervous, her mind was clear, and she was capable of making a valid deed or contract, in his opinion. Other witnesses, who observed her at the period under inquiry, gave descriptions of her faculties which leave no doubt in our minds as to her capability.

The legatees under the will of Mrs. Burton were permitted, over objections, to testify as to her statements in regard to the transactions we have discussed. It is contended that the legatees were incompetent to give such testimony because of their interest, under the will, in the fund involved in this suit. No such disqualification exists unless it is declared by section 3 of article 35 of the Code, which provides: "In actions or proceedings, by or against executors, administrators, heirs, devisees, legatees or distributees of a decedent as such, in which judgments or decrees may be rendered for or against them, and in proceedings by or against persons incompetent to testify by reason of mental disability, no party to the cause shall be allowed to testify as to any transaction had with or statement made by the testator, intestate, ancestor or party so incompetent to testify, either personally or through an agent since dead, lunatic or insane, unless called to testify by the opposite party * * **." The witnesses whose competency is challenged are not parties to the cause, and the will which give them an interest in the subject of the suit is not in-

volved in the issue now being decided. The cause of action to
which the statute refers is the one "in issue and on trial."
*Wright v. Gilbert,* 51 Md. 146; *Trahern v. Colburn,* 63 Md.
99; *Horner v. Frazier,* 65 Md. 1; *Robertson v. Mowell,* 66
Md. 533. It was said in *Temple v. Bradley,* 119 Md. 608:
"It is only where the suit is upon the cause of action to
which one party is dead that the other party is excluded to
preserve mutuality." The only question for adjudication in
this case is whether the title to the deposit in dispute was
held by Mrs. Burton at the time of her death, or passed to
Mr. Schaefer under the terms of the prior deposit account
from which it was withdrawn by her order. The title of the
legatees under her will to the money bequeathed to them de-
volves only through the administration of the estate, of which
the executor is the legal representative. *Rockwell v. Young,*
60 Md. 563; *Drovers & Mech. Bank v. Hughes,* 83 Md. 355;
*Snowden v. Crown Cork & Seal Co.,* 114 Md. 650. As the
party designated plaintiff by the interpleader decree, the
executor was fully qualified and empowered to assert and
protect the interests of the estate. The joinder of the lega-
tees as parties to the proceeding would have been superfluous,
and the motion of the defendant that they be made co-plain-
tiffs with the executor was properly overruled. *Gordon v.
Small,* 53 Md. 550.

*Decree affirmed, with costs.*