# HOPKINS PLACE SAVINGS BANK *v.* ELIZABETH HOLZER.

[No. 52, October Term, 1938.]

482

*Decided December 1st, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Carlyle Barton* and *Theodore R. Dankmeyer,* with whom were *George R. Coleburn* and *Niles, Barton, Morrow & Yost,* on the brief, for the appellant.

*Wilmer H. Driver* and *Wilson K. Barnes,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The Hopkins Place Savings Bank is a corporation engaged in the business of a mutual savings bank. In connection with its financial operations, the bank maintains a savings department for the receipt of deposits at interest, and issues to such depositors a pass book in which

are entered the number of the account, the terms of the contract of deposit, the charges of deposits made and the semi-annual accruals of interest, and the credits for withdrawals by the depositor. The pass book has separate columns for withdrawals, balance, and deposits, in the order here stated when read from right to left, so that the central column gives the current balance of the depositor, since both deposits and withdrawals were intended to be entered when severally made on the presentation of the bank at the counter.

Such a savings account was opened on March 13th, 1930, by the deposit of $5,414.79. The pass book was issued on that date and was given the number of the account; and the terms of deposit were thus written in the pass book at the head of the account: "John H. Holzer, in trust for himself and Elizabeth Holzer, joint owners, subject to the order of either, the balance at the death of either to belong to the survivor." On the day the deposit was made $500 was withdrawn, and three weeks later a second withdrawal of $150 was made. After these two amounts had been taken out, the account grew steadily by deposits at irregular intervals, and the practice was pursued of having the interest on the account, which accrued due at the expiration of every six month period, entered as a credit, so that with but two other small withdrawals, the amount to the credit of the account on April 12th, 1933, was $6,431.10.

After the Maryland Banking Holiday of February-March, 1933, the bank did not re-open on an unrestricted basis, and a plan of reorganization under the Emergency Banking Act became necessary. The plan adopted provided that deposits in the savings department, to the extent of sixty-five *per centum*, would be available to the depositors and that the residue of thirty-five *per centum* would be appropriated by the bank, and would be paid to the extent of the proceeds of certain segregated assets of the bank which were to be liquidated for this purpose. The depositors would participate in any distribution made by the bank so long as the sixty-five *per centum* remained

on deposit, but if any were withdrawn, there was a *pro rata* reduction in the distribution to be received. When the re-organized bank was opened in August, 1933, the effect of this plan on the account here in question is shown by the entries made by the bank in the pass book. Thirty-five *per centum* of the deposit, or $2,302.93, was absorbed and deducted from the deposit, in accordance with the plan, and, on this amount, the depositors were entitled to receive distribution dividends when and as made by the bank in pursuance of the terms of the plan of reorganization. The charge of this amount against the deposit account was entered as a withdrawal, and left to the credit of the account the sum of $4,128.17, or sixty-five *per centum* of the deposit, which was the amount in the account that remained subject to the terms of the deposit.

On August 7th, 1933, the husband, John H. Holzer, drew out of the account on his order, and without the participation or knowledge of his wife, Elizabeth Holzer, the sum of $4,000. There is testimony on the record which tends to show that this sum was forthwith similarly deposited in another institution, but this is an immaterial fact. Neither of the depositors or beneficiaries was under a duty or obligation of any kind to the bank, nor had any relation with the bank, except such as grew out of the terms of the deposit account. The money was the property of the depositors, and it was none of the affair of the former depository what was done with the money which was withdrawn in strict conformity with the terms of the deposit. It should be noted that, when the money was withdrawn, the bank was the debtor, and had defaulted to the extent of thirty-five *per centum* of the amount of the account. The plan of reorganization dedicated certain assets, which were not included in the portfolio of the reorganized bank, to the payment of the amount of the appropriated deposits to the extent the proceeds were sufficient. From the proceeds of the liquidation of such assets of the bank as were excluded from those assets upon which the reorganization plan was

based, dividends by way of distribution were declared and paid to the depositor in proportion to the amount his average monthly balance with the bank bore to the sixty-five *per centum* of his amount on deposit before the reorganization. These dividends from the proceeds of the excluded assets in liquidation were credited, when paid, against the thirty-five *per centum* of the deposit retained by the bank.

Since the effect of the withdrawal of $4,000 of the sixty-five *per centum* was to leave a residue of but $128.17, it was upon this amount, slightly increased by deposits of interest which had accrued, that the bank computed the February and August dividends of 1934 of $8.39 and $14.54, and credited them on the appropriated thirty-five *per centum* of the account.

The two dividends credited in 1934 were so small a contribution in the way of credit on the $2,302.93 which had been expropriated in the re-organization of the Bank, that the husband determined to increase these dividends by restoring the deposit in the account to the full sixty-five *per centum* of the deposit at the time of the re-organization, and thereby obtain the maximum proportion provided by the plan of re-organization. With this in view, Holzer, without the participation or knowledge of his wife, borrowed $4,100 of the bank on August 17th, 1934, and gave his individual promissory note of that date to the bank for the sum borrowed, payable on demand, with interest at the rate of five *per centum per annum*. The pass book was deposited by Holzer with the bank as collateral security for the payment of the note, and he agreed "to furnish additional security, when and as demanded, with the understanding that if such demand is not complied with within two hours this note shall become instantly due and payable." The note was in the usual form of a promissory note with collateral pledged, and all the promises, conditions, and terms were made and assumed by Holzer and none other. Upon the execution of the note, credit in the full amount of the note was entered on the pass book, and the total deposit was

thereby brought to $4,295.61, or slightly in excess of the sixty-five *per centum* of the deposit before the re-organization. The subsequent dividends were on this basis, and, with the interest on the savings account, were the only later deposits and credits entered. In accordance with its understanding with Holzer, the bank, after the execution of the note, kept the pass book, and entered therein the credits of interest as it accrued due, and of the dividends of distribution as they were made. And quarterly the interest on the $4,100 note of Holzer was charged to the account as a withdrawal, and so noted on the pass book.

Holzer died on October 2nd, 1935. His wife knew nothing of these various transactions, and believed that the bank kept the bank book for her convenience. After the loan of $4,100, Holzer drew no money from the account and his wife made but one. On April 13th, 1936, she went to the bank and said that she desired to withdraw $350 from the account, but did not have the book. She was informed that the book was not necessary, and the bank paid her the money, and the withdrawal was put by the bank on the pass book. She was not informed of the note of her husband, on which nothing but the interest had been paid in the manner stated, and knew nothing of the bank book being held as a pledge to secure her husband's note. Her first information was obtained when she demanded payment as the survivor, and the bank refused to pay her more than $208.12, or the amount of the savings account after the principal and interest of her husband's note were deducted. The wife then brought an action for the recovery of the deposit and obtained a judgment against the bank in the sum of $4,625.08. The bank has appealed.

There is no material conflict in the testimony. The rulings on the evidence and the prayers are consistent, and are in rejection of the defendant's theory that the pledge of the husband bound the wife, so that the payment of the principal and interest of the husband's note had to be made out of the savings bank deposits here in con-

troversy, before the wife as the survivor could claim any of the deposit.

The wife was not a party to the transaction whereby the loan was granted, the note given, the interest in the savings account pledged, and the doposit made by the borrower of the money loaned to the credit of the savings account. Neither does there appear any act or thing subsequently done whereby she became bound by the husband's pledge, or waived or became estopped fully to assert her rights and interest therein. The defendant, through its accredited and empowered official representatives, dealt with the husband alone at the bank a full year after the institution had been re-organized. The loan was sought by the husband and made to him on the pledge by him of the savings account in the bank, whose terms disclosed and advised the bank of the nature and contingencies of the interests of the husband and of his wife. The use which the husband proposed to make of the proceeds of the loan was known to the defendant, whose proper officers prepared the precise form of the promissory note and pledge for the husband to sign and execute. The whole transaction was begun and was concluded by the husband and the agents of the defendant in the rooms of the bank and in the presence of one another. The contract thus fairly and knowingly made bound the parties according to its terms as applied to the subject matter. The loan was to the husband singly. The transaction excludes any other conclusion. The nature and rights of the parties in interest to the fund on deposit were clearly and precisely defined by the declaration of trust set forth at the head of the account carried in the savings department and entered in the pass-book. The nature of the trust created was known to the parties, as was the fact that every deposit made to the credit of the fund became an integral part of the corpus of the trust and, therefore, was affected and was governed in its use and disposition by the terms of the trust. Thus the trust was not only for John H. Holzer, but for himself and Elizabeth Holzer, the plaintiff here, as joint

owners, subject to the power of withdrawal of all or any part of the fund on the order of either, and the fund or its residue, if any, at the death of either to belong to the survivor. *Milholland v. Whalen,* 89 Md. 212, 215, 216, 43 A. 43; *Littig v. Mt. Calvary Church,* 101 Md. 494, 496, 61 A. 635; *Ghingher v. Fanseen,* 166 Md. 519, 529, 530, 172 A. 75; *People's Bank v. Turner,* 169 Md. 430, 182 A. 314; *McDevit v. Sponseller,* 160 Md. 497, 499, 154 A. 140; *Fairfax v. Savings Bank of Baltimore,* 175 Md. 136, 199 A. 872.

Hence, whatever was deposited to the credit of this account, whether it be money, in specie or in the form of credit, as interest on the fund accruing due, as dividends declared in distribution of the proceeds of liquidation of assets segregated for the benefit of the appropriated thirty-five per centum of deposits, and as the proceeds of loans made with the depository, became a constituent of the corpus of the trust. Such corpus was at all times, until the death of the survivor, subject to the power of withdrawal of all or any part of the trust fund by either beneficiary, and so far as the depository is concerned, the use to which the sum so withdrawn was subsequently put was of no concern to the depository and had no effect upon its rights and liabilities with reference to the corpus of the trust. The pass book is not a negotiable instrument, and its possession does not constitute evidence of a right to draw money thereon, but charges the parties and their assignees with full knowledge of the terms of the deposit. *Royon v. Greenstein,* 122 Ohio St. 340, 171 N. E. 595; *Brogna v. Commissioner of Banks,* 248 Mass. 241, 142 N. E. 746; *Bryson v. Security Trust etc. Bank,* 29 Cal. App. 596, 156 P. 987; *McCaskill v. Connecticut Sav. Bank,* 60 Conn. 300, 22 A. 568; *First Nat. Bank v. Southworth,* 117 Ill. App. 143, affirmed 215 Ill. 640, 74 N. E. 771. So that delivery by the husband to the bank of the pass-book would have charged any assignee with full knowledge of the terms of the deposit, and the bank here had actual knowledge, as it was the depository of the funds. *5 Michie on Banks and Banking,*

ch. 9, sec. 46, pp. 105, 106. The bank therefore, had full notice of the rights and interests of the parties and its obligations and duties. Hence, when the husband delivered the possession of the pass-book as a pledge, the bank was charged with the knowledge that one joint owner cannot pledge the interest of his other joint owner as security for a debt, without the consent of that other joint tenant. Nor is there any testimony on this record tending to show that the pledge of the pass book by the husband was done by the authority of the wife or that it was ever ratified and confirmed by her. The power of one joint tenant to withdraw funds deposited in trust for the benefit of the joint tenants, and so, altogether or in part, to defeat the trust, does not by inference confer the power of one joint tenant to pledge for his own debt the interest of himself and his joint tenant in such a deposit. *Jones on Collateral Securities,* (3rd Ed.) sec. 65; 8 *Michie on Banks and Banking,* ch. 16, sec. 19, pp. 41, 42; *Mechem on Agency,* (2nd Ed.) sec. 186; *Levi v. Booth,* 58 Md. 305, 311; *People's Banking Company v. Fidelity & Deposit Co.,* 165 Md. 657, 678, 679, 170 A. 544, 171 A. 345; *Stone v. National City Bank,* 126 Md. 231, 94 A. 657. A power may not be implied which would destroy the trust created, for a purpose clearly in conflict with the design of its creation.

As noted in the appeal of *Ghingher v. Fanseen,* 166 Md. 519, 530, 172 A. 75, 80, "so much of the fund as remains in the deposit remains subject to the terms of the trust upon which the deposit was made, for the mere power to withdraw the fund cannot be accepted as equivalent to an actual withdrawal thereof." The husband made no withdrawal of the fund but, without the knowledge of his wife, merely gave the bank physical possession of the pass-book. He signed no withdrawal slip, order, or check, and no entry was made in the account. All, therefore, that passed to the bank by the terms of the collateral note and the effect of the manual delivery of possession of the pass-book, was to transfer an equitable title and right to the interest of the husband, which would be

defeated by the death of the husband before the wife. The bank required nothing of the wife and was content to accept the interest of the husband alone in the deposit as security. The court cannot now enlarge the terms of a contract in aid of the bank.

The rulings of the court on the testimony and prayers are in conformity with the views here expressed, and so, the judgment must be affirmed.

*Judgment affirmed, with costs to the appellee.*