620 A.2d 941

**MARYLAND NATIONAL BANK**

v.

**Ruth Ellen PEARCE.**

**No. 65, Sept. Term, 1992.**

Court of Appeals of Maryland.

March 15, 1993.

Motion for Reconsideration Denied April 21, 1993.

Gerard R. Vetter (Semmes, Bowen & Semmes, both on brief), Baltimore, for appellant.

Charles M. Kerr (Irwin, Kerr, Green, McDonald and Dexter and Kathleen M. McDonald, Caroline A. Griffin, all on brief), Baltimore, for appellee.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired), Specially Assigned.

KARWACKI, Judge.

This case concerns the duty of a bank under Maryland Code (1974, 1989 Repl.Vol.), § 11–603 of the Courts and Judicial Proceedings Article, to impound funds held in a joint account of a husband and wife when an attachment is laid in its hands by a judgment creditor of the husband only. At the time the garnishment was initiated, § 11–603, which was enacted by Ch. 818 of the Acts of 1989, provided:

"(a) *Spousal property.*—(1) Except as provided in paragraph (2) of this subsection, a garnishment against property held jointly by husband and wife, in a bank, trust

company, credit union, savings bank, or savings and loan association or any of their affiliates or subsidiaries is not valid unless both owners of the property are judgment debtors.

(2) Paragraph (1) of this subsection does not apply unless the property is held in an account that was established as a joint account prior to the date of the entry of judgment giving rise to the garnishment.

(b) *Property held in trust.*—A garnishment against property held in a bank, trust company, credit union, savings bank, or savings and loan association, or any of their affiliates or subsidiaries, by one party in trust for that party and another party or parties, is not valid unless all of the parties are judgment debtors.

(c) *Joint Accounts.*—(1) If property held jointly in an account in a bank, trust company, credit union, savings bank, or savings and loan association, or any of their affiliates or subsidiaries, is garnished, and less than all of the persons named on the account are the judgment debtors, the garnishee may pay into the court from which the writ of garnishment has been issued the lesser of the amount of the judgment or the amount held in the account.

(2) If the garnishee makes payment into the court as provided under paragraph (1) of this subsection, the garnishee may not be held liable to the judgment creditor or to any person named on the account for wrongful dishonor or for any other claim relating to the garnishment." [1]

---

**1.** § 11–603 was amended by Ch. 117 of the Acts of 1991, which rewrote subsection (c) to read as follows:

"(c) *All accounts in the name of 2 or more persons.*—(1) Notwithstanding subsections (a) and (b) of this section and regardless of the relationship between or among the persons, if property held in an account in the name of 2 or more persons at a bank, trust company, credit union, savings bank, or savings and loan association or any of their affiliates or subsidiaries is garnished, and fewer than all of the persons named on the account are the judgment debtors, the garnishee may answer the writ of garnishment by stating:

## I.

In September of 1979, Ruth Ellen Pearce, the appellee, was awarded a $113,500 judgment against John G. Micka in the Circuit Court for Howard County as damages resulting from his legal malpractice. $96,000 of the judgment was for compensatory damages and $17,500 was awarded in punitive damages. See *Pearce v. Micka*, 62 Md.App. 265, 489 A.2d 48 (1985). Micka did not have malpractice liability insurance to cover the judgment and has avoided any substantial payment of the judgment up to this point.[2]

On January 15, 1990, Micka and his wife, Paula, sold their home at 333 Frostwork Road in Columbia, Maryland for $215,251. They purchased the home in 1976 and held it as tenants by the entireties. The couple received a net settlement of $108,130 which was dispersed in two checks. The first check was drawn to Paula Micka and deposited in her account at Provident Bank. The balance was paid by a second check for $53,065.35 drawn to John G. and Paula Micka. They opened a new account with Maryland National

---

(i) That the property is held in an account at the garnishee in the name of 2 or more persons, 1 or more of whom but fewer than all of whom, are judgment debtors; and

(ii) The amount held in the account at the time the writ of garnishment was served on the garnishee.

(2) If the garnishee answers as described in paragraph (1) of this subsection, the garnishee shall hold the lesser of the amount of the judgment or the amount in the account subject to an entry of a court order releasing the property held by the garnishee or a final judgment in the garnishment proceeding.

(3) If the garnishee answers and holds property as provided under paragraphs (1) and (2) of this subsection, the garnishee may not be held liable to the judgment creditor or to any person named on the account for wrongful dishonor or for any other claim relating to the garnishment.

This amendment applied to "garnishments initiated on and after July 1, 1991."

**2.** Micka was disbarred by this Court on November 20, 1980, following a finding that he had misappropriated funds of a client, John H. Hancock, which were entrusted to his care. *Attorney Grievance Comm'n v. Micka*, 289 Md. 131, 422 A.2d 383 (1980).

Bank, the appellant, on January 17, 1990, and deposited the funds there. At trial, Mr. Micka testified:

"Well I, I had gone to Provident, I had asked Provident if they could, if they had an account that could be held by husband and wife, subject to withdraw [sic] by either, that on the death of one the balance went to the survivor, and that because it was held by husband and wife couldn't be attached because there was a judgment against me. And I found that that wasn't possible at Provident—

MR. KERR: Object, move to strike.

THE COURT: Overruled.

"A. So I went to Maryland National, which was right down the street. At Maryland National, I found that that was possible, that they had an account that fulfilled my requirements and my requirements were from my prior understanding.

"Q. And so those were the same requirements you just enumerated for Provident? Correct?

"A. Yes sir.

"Q. That is, held jointly by you and your wife?

"A. Yes sir.

"Q. With the right of survivorship, death of either one of you the balance would be paid—

"A. The balance, yes sir.

"Q. And that it would not be attachable for the debts of any one of you?

"A. Yes sir."

The agreement which the Mickas signed when opening the account at Maryland National provided in pertinent part:

"The bank is authorized to rely on any one of the signatures below for transacting business on this account. If this account has multiple owners: (1) the account shall be considered held jointly by each owner in trust for one another; (2) each owner shall be fully liable for all obligations arising under the terms of the account; and

(3) any balance in the account at the death of any owner shall belong to the surviving owner(s)."

The signature card containing that agreement was signed by John G. and Paula Micka under the declaration: "JOINT ACCOUNT—SUBJECT TO THE RIGHT OF EACH OWNER TO WITHDRAW." The garnishment of that Maryland National account is the subject of this appeal.

On June 18, 1990, Ruth Pearce filed a Request for A Writ of Garnishment with the Clerk of Court for Howard County, seeking garnishment of the Maryland National account. The writ directed Maryland National to hold "[a]ny [a]ccounts on which Judgment Debtor's name appears, including account No. 960–126–100" and to file a written answer within 30 days of service. The Writ of Garnishment was served on June 20, 1990.

On August 2, 1990, Maryland National filed an answer, stating:

"It confesses that it holds assets of the defendant consisting of an interest in a joint deposit account, however, the joint nature of this account precludes garnishment for the satisfaction of the judgment entered against the defendant in this case."

Pearce filed a response on August 7, 1990, contesting that answer.

At the time the writ was served on Maryland National, the Mickas' account balance was $33,237.79. The Mickas continued to have access to the funds which were used for household expenses and tuition for their son until July 10, 1991, when Maryland National filed an amended answer where it stated:

"It confesses that it holds assets of the defendant in an account owned by two (2) or more persons, one (1) or more of whom but fewer than all of whom, are judgment debtors. Garnishee is holding assets consisting of money market account no. 0960126100 with a balance of $8,636.45, pending further order of the Court."

Pursuant to Maryland Rule 2–645(g), the case came to trial on January 2, 1992, before Judge Raymond J. Kane, Jr., who ruled that the Mickas' account was a "spousal account,"[3] under § 11–603(a) of the Courts and Judicial Proceedings Article. The court agreed with Pearce that because her judgment against John G. Micka preceded the opening of the Mickas' account at Maryland National, the account was subject to garnishment, even though Pearce was a judgment creditor of only one of the account owners.

The court entered judgment in favor of Pearce and against Maryland National for $33,237.79, the amount in the Mickas' account the day the bank was served with the Writ of Garnishment, plus $667.96 in interest that accrued on that principle sum through July 23, 1990, when the account reached its highest balance. Maryland National appealed to the Court of Special Appeals. We issued our writ of certiorari prior to consideration of the case by the intermediate appellate court.

On appeal, Maryland National Bank argues two theories for reversal. First, that the Mickas opened the Maryland National account with monies held as tenants by the entirety, and therefore, the account could not be attached or

---

**3.** In his oral opinion delivered at the conclusion of the trial, the trial judge stated:

"And as I view it, the legislature, when you read the statute, has established two types of property, two types of joint property that they called spousal property and what they've called property held in trust. And, you know, I don't find that even though it's not the clearest expression of sentiment, I think the legislature views the words that it did use by design. It's not by inadvertence that they came up with this language and quite frankly for whatever reason the legislature believed appropriate, I construe 11–603 to say that the legislature saw fit to treat all spousal accounts alike. Now whether they're joint trust accounts or not, and for whatever reason the legislature saw fit to treat spousal accounts, that might be in trust, differently from, from accounts that other individuals or co-owners might, might have in trust.

We note that the caption to § 11–603(a), *"Spousal property,"* was supplied by the publisher of the Maryland Code and not the words of the Legislature. Md.Code (1957, 1990 Repl.Vol.), Art. 1, § 18; *Morris v. Prince George's County,* 319 Md. 597, 607 n. 4, 573 A.2d 1346, 1350 n. 4 (1990).

garnished by a creditor of only one spouse. Second, that the Mickas' account was a jointly owned account, which each held in trust for the other, protected from garnishment for the individual debt of either by § 11–603(b) of the Courts and Judicial Proceedings Article. It will not be necessary for us to address Maryland National's first argument since we agree with its second contention and shall reverse.

## II.

## A.

The treatment of multi-party bank accounts in trust form has long been a matter addressed by the common law. In *Milholland v. Whalen,* 89 Md. 212, 43 A. 43 (1899), our predecessors delivered the seminal decision on the treatment of such accounts. In that case, Miss Elizabeth O'Neill opened a bank account at the Metropolitan Savings Bank in April, 1895. The pass-book included the language: "Metropolitan Savings Bank, in account with Miss Elizabeth O'Neill. In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either; the balance at the death of either to belong to the survivor." *Id.* at 213, 43 A. at 43. Miss O'Neill retained the passbook in her possession. At Miss O'Neill's death, both her executor, Charles W. Milholland, and Mrs. Whalen claimed the account balance. The trial court awarded the funds to the beneficiary of the trust as against the estate. The estate appealed.

The Court held that the declaration in the account was sufficient to create a trust:

> "In Maryland it is not requisite that the *cestui que trust* should be notified of the declaration or establishment of the trust. It is the donor's act which originates the trust, and it is the intention with which he does the act that is material. The entry, unexplained, is a sufficient declaration of trust, because it indicates an intention to establish a trust; but this may be rebutted. Possession by the

depositor of the bank-book in no way detracts from the force of the entry; because it is a possession by the trustee and does not denote that no beneficial interest had been given to the *cestui que trust.* If the delivery of the money to a bank to be placed to the credit of the depositor in trust for another, and the declaration of the trust, as evidenced by the entry made pursuant to the settlor's instructions, constitute and evidence a valid trust, then no act of the depositor in subsequently withdrawing the money can affect the rights of the *cestui que trust,* unless the power to withdraw be reserved."

*Id.* at 216, 43 A. at 44 (citations omitted).

The Court continued:

"Without multiplying illustrations, or overburdening this opinion with further references, those just given suffice to show that such a deposit as we are now dealing with, constitutes a valid declaration of trust, in the absence of contravening proof; and that when a trust is thus created the rights of the beneficiary become fixed, even though the settlor retains the bank-book in his possession. Nor does the circumstance that the depositor makes himself a beneficiary jointly with another, prevent the trust from attaching to the fund. A trust is not rendered void by the appointment of a beneficiary as trustee."

*Id.* at 218, 43 A. at 45.[4]

This Court has consistently applied *Milholland* when dealing with joint bank accounts in trust form. *See, e.g.,*

---

**4.** On the same day in 1899, the Court decided *Whalen v. Milholland,* 89 Md. 199, 43 A. 45 (1899). In that case Elizabeth O'Neill had on deposit to her own credit in the Savings Bank of Baltimore the sum of $2,100.42. On May 6, 1891, she closed that account and used the money to open another in the same bank with this designation:
"Elizabeth O'Neill and Mary Whalen. Joint owners. Payable to the order of either or to the survivor."
*Id.* at 200, 43 A. at 46.
This language was stamped in the pass book for the account of which O'Neill retained possession until her death in 1897. Whalen and O'Neill's executor both claimed the amount on deposit in the account

*Arbaugh v. Hook,* 254 Md. 146, 150–51, 254 A.2d 187, 189–90 (1969) (estate rebutted presumption that decedent's landlady had right of survivorship in joint account when account language expressed survivorship by evidence that decedent intended joint account to create special trust for definite and limited purpose terminating at his death); *Shirk v. Suburban Trust Co.,* 248 Md. 114, 118, 235 A.2d 549, 552 (1967) (joint owner's action to recover balance of joint accounts held in trust for her and another with survivorship rights failed when defendant bank rebutted presumption with evidence that decedent intended change of ownership for convenience prior to death, not as gift); *Wenger v. Rosinsky,* 232 Md. 43, 50, 192 A.2d 82, 87 (1963) (burden shifts from executrix to defendant joint owner to show creation of account was fair, reasonable and provident where executrix adduced that trust account with survivorship rights was created at time when defendant had confidential relationship with decedent); *Nicholas v. Owrutsky,* 230 Md. 60, 65, 185 A.2d 498, 500–01 (1962) (in action between guardian and executor to determine ownership of account, absent clear and convincing evidence of donor's intention to establish trust, such as "in trust," the usual badge of intention, executor entitled to fund); *Kuhl v. Reese,* 220 Md. 459, 460, 154 A.2d 712, 713 (1959) (executor rebutted presumption of trust account with right of surviv-

---

at the time of O'Neill's death. The Court affirmed a judgment in favor of the executor, reasoning

"[I]f this deposit had been made by Miss O'Neill in her own and her sister's names as joint owners, payable to the order of either or the survivor, though all the money was in fact the property of Miss O'Neill; and if thereafter she had deliberately given the book to her sister with the intention of donating the fund to her, and had reserved no control over it herself; upon the acceptance of that gift by Mrs. Whalen there would have been a perfected gift of the money, vesting the ownership thereof in Mrs. Whalen and entitling her to the possession of it."

*Id.* at 208, 43 A. at 49.

Nevertheless, since there was insufficient evidence of a delivery of the pass book by O'Neill to Whalen, no gift was established, and the bank account remained the sole property of O'Neill at the time of her death.

orship by evidence that account was created as matter of convenience to donor in ill health with no intention to create trust in favor of joint owner); *Blair v. Haas*, 215 Md. 105, 115, 137 A.2d 145, 150 (1957) (executor suing to recover funds withdrawn from joint bank account held in trust by two parties for each other with survivorship rights failed to rebut presumption of sufficient declaration of trust); *Shook v. Shook*, 213 Md. 603, 607, 132 A.2d 460, 462 (1957) (brother and sister who sued joint owner, brother, named on trust account who took remaining balance at death of donor successfully rebutted presumption of valid trust with evidence that account was opened for convenience of father who intended balance to be divided among children); *Bierau v. Bohemian Bldg., Loan & Savings Ass'n*, 205 Md. 456, 461–62, 109 A.2d 120, 123 (1954) (in action by executor for declaration of status of fund, court properly upheld valid trust where trust language was used and parol evidence supported donor's intent); *Whittington v. Whittington*, 205 Md. 1, 8–9, 106 A.2d 72, 75 (1954) (widow failed to rebut presumption of trust in accounts created by deceased husband in trust for himself and his sons as joint owners, subject to withdrawal of either, with survivorship rights, where passbooks used trust language, signature cards did not, but bank officer testified to decedent's intentions); *Hancock v. Savings Bank of Baltimore*, 199 Md. 163, 170, 85 A.2d 770, 772 (1952) (where surviving joint owner in confidential relationship with decedent shows creation of joint account was fair and reasonable and executor failed to show contrary intent of decedent, valid trust will be found); *Bollack v. Bollack*, 169 Md. 407, 415–16, 182 A. 317, 320 (1935)·(in action by children of decedent's pre-deceased son against estate and decedent's children to invalidate trust accounts opened by decedent with the children as joint accounts with survivorship rights, plaintiffs failed to meet showing of confidential relationship in order to shift burden of proof to defendants or to rebut resumption of valid trust); *Ghingher v. Fanseen*, 166 Md. 519, 528, 172 A. 75, 79 (1934) (in action by jointly owned account holder against

bank commissioner to enforce set-off of plaintiff's individual bank liability against balance of account owned jointly in trust with wife, no set-off was permitted because plaintiff's interest in account that of a trustee and may not be used to set-off claim of bank against him personally); *Kozlowska v. Napierkowski*, 165 Md. 620, 628, 170 A. 193, 196 (1934) (in action by boyfriend to recover from daughter of deceased girlfriend and executor balance of account in name of girlfriend to which boyfriend had made initial deposit, plaintiff failed to present sufficient evidence to show intention that girlfriend should hold account in trust for her own and boyfriend's use until marriage, and thereafter by the entirety); *Foschia v. Foschia*, 158 Md. 69, 71, 148 A. 121, 122 (1930) (in action by widow against administratrix and bank to recover gift of balance in joint account held in trust by decedent and brother, subject to the order of either with survivorship rights, court improperly sustained demurrer despite allegation that decedent did not intend to have account balance pass to brother, joint owner named on account, and intended balance as gift to wife); *Sturgis v. Citizen's National Bank*, 152 Md. 654, 658–59, 137 A. 378, 380 (1927) (in suit by widow to annul gift by husband to grandnieces by means of a trust account with survivorship rights by alleging improper trust form and fraud on her marital rights, plaintiff failed to rebut presumption of valid trust and failed to show fraud on her marital rights); *Schaefer v. Spear*, 148 Md. 620, 625, 129 A. 898, 899 (1925) (in action by executor against joint owner of account opened by decedent in trust for herself and defendant as joint owners, subject to the order of either, with survivorship rights, contravening evidence prevented adoption of view that irrevocable trust was intended); *Gimbel v. Gimbel*, 148 Md. 182, 185, 128 A. 891, 893 (1925) (donor who created joint accounts in trust for herself and individual adult children, subject to the order of both, with survivorship rights, successfully rebutted presumption of valid trust enabling her to access accounts without signature of child); *Coburn v. Shilling*, 138 Md. 177, 197–98, 113 A. 761, 768–69 (1921) (in

interpleader action between surviving joint owner of trust account and estate to determine ownership of fund, presumption in favor of valid trust rebutted); *Mathias v. Fowler*, 124 Md. 655, 661–667, 93 A. 298, 301–02 (1915) (in interpleader action brought by bank against claimants to joint bank account and administrator to determine ownership of joint account between donor and joint owner with survivorship rights, court held that absent "trust" language in account agreement or expressed intent of donor, trust will not be imposed); *Baker v. Baker*, 123 Md. 32, 42, 90 A. 776, 779–80 (1914) (administrator in suit to recover proceeds of account owned jointly by husband and wife in trust for one another with right of survivorship with residue to pass to children on survivor's death failed to rebut presumption of valid trust where appropriate trust language was used to open account); *Mulfinger v. Mulfinger*, 114 Md. 463, 467–69, 79 A. 1089, 1090 (1911) (in suit by grandmother-donor who opened account in trust for herself and her granddaughter, as joint owners, subject to order of either, with survivorship rights, absent contravening evidence court properly found valid trust, granddaughter could withdraw funds at will, and was entitled to balance at death of grandmother); *Littig v. Mount Calvary Church*, 101 Md. 494, 495, 61 A. 635, 635–36 (1905) (in action by executor to recover balance of bank account for estate, donor's creation of account in trust for church was sufficient declaration to create trust in favor of church at her death).

The Court first addressed the garnishment of a joint bank account in trust form in *Fairfax v. Savings Bank of Baltimore*, 175 Md. 136, 199 A. 872 (1938). In that case, the judgment-creditor, Fairfax, attempted to garnish a Savings Bank of Baltimore account owned jointly by the judgment-debtor, Brazier, and his wife. The account agreement described the account as: "Howard E. Brazier, in trust for self and Nellie M. Brazier, joint owners, subject to the order of either, balance at the death of either to belong to the survivor." *Id.* at 138, 199 A. at 874. The initial deposit in that account was the residue of a similarly worded trust

account held jointly by Brazier and his mother which passed to Brazier upon her death. The Braziers later deposited into the account the proceeds of a mortgage on investment property which they held as tenants by the entireties.

Fairfax attempted to garnish the account to satisfy a judgment awarded in a tort action arising from an automobile accident where Mr. Brazier's negligence resulted in Fairfax's injuries. The Court held that Fairfax could not reach the account because Brazier's ownership was contingent on his surviving his wife. Judge Parke explained for the Court:

"The debtor beneficiary, therefore, has, during the joint lives of himself and wife the contingent right of survivorship in the trust fund; and the use or power of withdrawal in common with his wife, which either may exercise independently of the other. By the plain language of the declaration of trust the interest of the husband in the corpus of the trust is contingent upon his survival of his wife. So, the interest is uncertain and contingent in the sense that none of the deposit or trust may ever become due and payable to the husband. Such an interest is not subject to attachment as it is not within the scope of [Art. 9], Section 10." [5]

*Id.* at 141, 199 A. at 875. The Court continued:

"It is apparent that if the husband had died after the attachment was issued, the judgment creditor would have no right against the funds or corpus, and the wife would receive, use, and enjoy her absolute estate in severalty in all of the personalty. The attaching creditor could not compel the husband as beneficiary to deprive the other

---

**5.** Md.Code (1924) Art. 9, § 10 then provided:
"Any kind of property or credits belonging to the defendant, in the plaintiff's own hands, or in the hands of any one else, may be attached; and credits may be attached which shall not then be due." Currently, Md.Code (1974, 1989 Repl.Vol.) § 3–305 of the Courts and Judicial Proceedings Article provides:
"An attachment may be issued against any property or credit, matured or unmatured, which belong to a debtor."

*cestui que trust* of the benefit of her right of survivorship by a present appropriation of the whole or any part of the trust fund so held for their benefit. A valid trust may not be diverted from its uses by attachment. The reason is that rights of the husband as a *cestui que trust* are determined by the terms of the deed of trust in which the equitable interest of the husband is not several, and may not be made or become several in the husband except if and when so made conformably with the terms of the declaration of trust. Since no event has occurred nor any power been exercised, within the contemplation of the trust, to make either the depositary or the husband as fiduciary liable as debtor to the husband personally in any amount, there are no ascertainable property rights or credits subject to the writs of attachment laid in the hands of the two garnishees."

*Id.* at 142–43, 199 A. at 875–76 (citations omitted).

This Court has subsequently cited *Fairfax* as the rule governing garnishment of accounts and other property where the judgment debtor has a contingent interest. In *Hopkins Place Savings Bank v. Holzer,* 175 Md. 481, 2 A.2d 639 (1938) a trust account was established with the following provision:

"John H. Holzer, in trust for himself and Elizabeth Holzer, joint owners, subject to the order of either, the balance at the death of either to belong to survivor."

*Id.* at 483, 2 A.2d at 640.

At a later date, John Holzer borrowed funds from the bank without his wife's knowledge and deposited the proceeds in the trust account. He pledged the trust account as collateral and deposited the passbook with the bank. The bank charged the trust account for interest payments. It was not until after her husband's death when she encountered difficulty in withdrawing funds from the account that Mrs. Holzer discovered the loan and pledge of the bank account. She sought to recover the entire balance of the trust account, including that portion collateralized to secure her husband's note. Judgment was granted in her favor

and the bank appealed. The Court concluded that the loan was simply an agreement between John Holzer and the bank, that the bank had knowledge of the terms of the trust account and was estopped from acting against the terms of the account, and that there was no evidence that the wife gave her husband or the bank permission to use the trust account for collateral. The Court stated:

"The power of one joint tenant to withdraw funds deposited in trust for the benefit of the joint tenants, and, so, altogether or in part, to defeat the trust does not by inference confer the power of one joint tenant to pledge for his own debt the interest of himself and his joint tenant in such a deposit. A power may not be implied which would destroy the trust created for a purpose clearly in conflict with the design of its creation."

*Id.* at 489, 2 A.2d at 643. *See also FICO, Inc. v. Ghingher,* 287 Md. 150, 411 A.2d 430 (1980); *Belcher v. GEICO,* 282 Md. 718, 387 A.2d 770 (1978).

The Court of Special Appeals applied *Fairfax* in *Andree v. Equitable Trust Co.,* 46 Md.App. 688, 420 A.2d 1263 (1980). There, a husband and wife had two checking accounts and a savings account at Equitable Trust Co., all of which were held jointly, in trust for one another, subject to the order of either, and payable upon death to the survivor. A judgment creditor of the wife caused an attachment to be laid in the hands of the bank. Purporting to act pursuant to Md.Code (1957, 1976 Repl.Vol.), Art. 11, § 103,[6] the bank

---

6. Md.Code (1957, 1976 Repl.Vol.), Art. 11, § 103 provided:

"No banking institution doing business in this State shall be required to recognize, or take any action with respect to, any claim to a deposit or to money or property in its hands or contained in a safe deposit box, adverse to the interests of any person, corporation or other legal entity, appearing on its records as entitled to receive from it such deposit, money or property or a part thereof, except that if there is served upon such banking institution a restraining order, injunction, attachment, garnishment, order to show cause, or other order, or decree, issued or entered by a court in this State in an action, to which the adverse claimant is a party, involving a claim to the whole or a part of such deposit, money or property, then such institution may, or to the extent required thereby shall,

impounded all of the accounts in which the wife had an interest, including the three accounts she held jointly with her husband. As a result, the bank dishonored checks drawn by the husband and wife on their joint checking accounts, and they sued the bank for "wrongful dishonor and conversion." The bank's demurrer to their declaration was sustained without leave to amend, and they appealed from the judgment entered on that order. The Court of Special Appeals reversed. The late Chief Judge Gilbert, speaking for the court wrote:

> "The message of the Court of Appeals of Maryland, delivered to banking institutions and attaching creditors, through the medium of *Fairfax v. Savings Bank of Baltimore,* 175 Md. 136, 199 A. 872 (1938), was crystal-line. In the *Fairfax* case, the Court held that in the absence of fraudulent conduct by a husband and a wife, a judgment creditor who has a claim against one spouse, but not both, may not attach a joint bank account, in trust for another, and subject to the order of either. The right to withdraw from the account, the Court said, is 'a reserved personal right of each, and beyond the control of the other, and, therefore, whether it shall be exercised depends wholly upon the individual will of each severally motivated.' 175 Md. at 144, 199 A. at 876."

*Id.* 46 Md.App. at 689, 420 A.2d at 1264. Holding that Article 11, § 103, did not authorize the impounding of the accounts in trust form, the court reasoned:

> "Equitable argued persuasively to the hearing judge that the statute, enacted by Laws 1951, ch. 79, permitted the bank to do exactly what it had done, namely, freeze the joint accounts. Equitable asserted that the statute is directed toward accounts in which the debtor is the sole

---

> impound and withhold all or any part of such deposit, money or property, subject to further order of the court and without any liability on its part to anyone for so doing."
>
> That statute has been recodified without substantive change as Md. Code (1980, 1992 Repl Vol.), § 5–306 of the Financial Institutions Article.

or part owner. It follows then, the way Equitable reads the statute, that *Fairfax* has been rendered nugatory by the 1951 act.

"We do not share Equitable's view of the effect of the statute. The statute does not purport to authorize that which *Fairfax* forbids. Rather, the statute does no more than *Fairfax* allows."

*Id.* at 692, 420 A.2d at 1265.

### B.

Given the status of the common law governing garnishment of joint bank accounts in trust form in 1989, we must ascertain the legislative intent of the General Assembly in enacting Ch. 818 of the Acts of 1989. In *Taxiera v. Malkus*, 320 Md. 471, 578 A.2d 761 (1990), we restated our rule on the construction of statutes:

"Again and again, we have said that the cardinal rule of statutory construction is to ascertain and effectuate the legislative intention. While the language of the statute is the primary source for determining legislative intent, the plain meaning rule is not absolute. Rather, the statute is to be construed reasonably with reference to the purpose, aim, or policies of the Legislature reflected in the statute. Words in the statute must, therefore, be read in a way that advances the legislative policy involved."

*Id.* at 480, 578 A.2d at 765 (citations omitted).

In defining the extent we will search for legislative purpose, we said in *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987):

"When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the funda-

mental issue of legislative purpose or goal, which becomes the context with which we read the particular language before us in a given case."

*Id.* at 514–15, 525 A.2d at 632–33.

Ch. 818 of the Acts of 1989 began its legislative life with the introduction of House bill 1027. That bill provided:

"AN ACT concerning

Garnishment—Jointly Owned Property

FOR the purpose of providing that a garnishment against jointly held property in the hands of certain financial institutions is not valid unless all owners of the property are judgment debtors.

BY adding to

Article—Courts and Judicial Proceedings Section 11–603

Annotated Code of Maryland

(1984 Replacement Volume and 1988 Supplement)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

Article—Courts and Judicial Proceedings 11–603.

A GARNISHMENT AGAINST JOINTLY HELD PROPERTY, IN THE HANDS OF A BANK, TRUST COMPANY, SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES IS NOT VALID UNLESS ALL OWNERS OF THE PROPERTY ARE JUDGMENT DEBTORS."

After its first reading, the bill was referred to the Committee on Judiciary. 1989 House Journal, at 686–87. That Committee reported two amendments to the bill and, as amended, gave the bill a favorable report. The bill, as amended, was then read for the second time. 1989 House Journal, at 1790–91. After a third reading the bill, as amended, was passed by the House and sent to the Senate. 1989 House Journal, at 1940–41. When it was sent to the Senate, the bill was in the following form:

"AN ACT concerning

Garnishment—~~Jointly Owned Property~~ <u>Property Held Jointly by Husband and Wife</u>

FOR the purpose of providing that a garnishment against ~~jointly held property in the hands of~~ <u>property held jointly by husband and wife in</u> certain financial institutions is not valid unless ~~all~~ <u>both</u> owners of the property are judgment debtors.

BY adding to

Article—Courts and Judicial Proceedings Section 11-603

Annotated Code of Maryland

(1984 Replacement Volume and 1988 Supplement)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

Article—Courts and Judicial Proceedings

11-603.

A GARNISHMENT AGAINST ~~JOINTLY HELD PROPERTY, IN THE HANDS OF~~ <u>PROPERTY HELD JOINTLY BY HUSBAND AND WIFE, IN</u> A BANK, TRUST COMPANY, <u>CREDIT UNION,</u> SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES IS NOT VALID UNLESS ~~ALL~~ <u>BOTH</u> OWNERS OF THE PROPERTY ARE JUDGMENT DEBTORS.[7] "

H.B. 1027, as amended, was read for the first time in the Senate and referred to its Judicial Proceedings Committee. 1989 Senate Journal, at 1754. That committee made several amendments. It amended the title of the bill by striking "Property Held Jointly by Husband and Wife" and substituting "Jointly Owned Property"; in the second and third lines of the purpose clause, it struck "property held jointly

---

**7.** The underlining above indicates the amendments to H.B. 1027 which were adopted in the House. The ~~strike-outs~~ indicate the matter stricken from H.B. 1027 by the amendments which were adopted in the House.

by husband and wife in" and substituted "jointly held property in the hands of"; in the third line of the purpose clause, it struck "not"; in the fourth line of the purpose clause, it struck "unless" and substituted "regardless of whether all"; in the same line, it struck "both"; and in the fifth line of the purposes clause after "debtors", it inserted "and providing for a certain exception." In the first line of the body of the bill, before "A", it inserted "(A) except as provided in subsection (B) of this section"; in the second line, it struck "property held jointly by husband and wife and substituted "jointly held property, in the hands of"; in the fourth line, it struck "not"; in the fifth line, it struck "unless" and substituted "regardless of whether all"; in the same line, it struck "both"; and after the last line, it inserted "(B) This section does not apply to property designated as owned by one party in trust for that party and another party or parties, unless all the parties are judgment debtors." As amended, the committee reported the bill favorably, and it was read for the second time. 1989 Senate Journal, at 2254–55. The bill, as amended, was read for a third time and passed by the Senate. 1989 Senate Journal, at 2388.

When H.B. 1027 was returned to the House, the House refused to accept the Senate amendments. 1989 House Journal, at 2549–50. The Senate refused to recede from its amendments, and the bill was sent to a conference committee. 1989 Senate Journal, at 2775–76. The conference committee made several amendments, and following these amendments, H.B. 1027 provided:

"AN ACT concerning

Garnishment—~~Jointly Owned Property~~ Property Held Jointly ~~by Husband and Wife~~

FOR the purpose of providing that a garnishment against certain ~~jointly held property in the hands of~~ property held jointly ~~by husband and wife~~ in certain financial institutions is not valid unless ~~all~~ ~~both~~ *the* owners of the property are judgment debtors; permitting certain financial institutions to pay a certain amount into court under

certain circumstances if property in a joint account is garnished; and providing that under certain circumstances a garnishee may not be held liable to the judgment creditor or any person named on a joint account that is subject to garnishment.

BY adding to

Article—Courts and Judicial Proceedings Section 11–603

Annotated Code of Maryland (1984 Replacement Volume and 1988 Supplement)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

Article—Courts and Judicial Proceedings 11–603.

(A)(1) EXCEPT AS PROVIDED IN PARAGRAPH (2) OF THIS SUBSECTION, A GARNISHMENT AGAINST JOINTLY HELD PROPERTY, IN THE HANDS OF PROPERTY HELD JOINTLY BY HUSBAND AND WIFE, IN A BANK, TRUST COMPANY, CREDIT UNION, SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES IS NOT VALID UNLESS ALL BOTH OWNERS OF THE PROPERTY ARE JUDGMENT DEBTORS.

(2) PARAGRAPH (1) OF THIS SUBSECTION DOES NOT APPLY UNLESS THE PROPERTY IS HELD IN AN ACCOUNT THAT WAS ESTABLISHED AS A JOINT ACCOUNT PRIOR TO THE DATE OF ENTRY OF JUDGMENT GIVING RISE TO THE GARNISHMENT.

(B) A GARNISHMENT AGAINST PROPERTY HELD IN A BANK, TRUST COMPANY, CREDIT UNION, SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION, OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES, BY ONE PARTY IN TRUST FOR THAT PARTY AND ANOTHER PARTY OR PARTIES, IS NOT VALID UNLESS ALL OF THE PARTIES ARE JUDGMENT DEBTORS.

(C)(1) IF PROPERTY HELD JOINTLY IN AN ACCOUNT IN A BANK, TRUST COMPANY, CREDIT UNION, SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION, OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES, IS GARNISHED, AND LESS THAN ALL OF THE PERSONS NAMED ON THE ACCOUNT ARE THE JUDGMENT DEBTORS, THE GARNISHEE MAY PAY INTO THE COURT FROM WHICH THE WRIT OF GARNISHMENT HAS BEEN ISSUED THE LESSER OF THE AMOUNT OF THE JUDGMENT OR THE AMOUNT HELD IN THE ACCOUNT.

(2) IF THE GARNISHEE MAKES PAYMENT INTO THE COURT AS PROVIDED UNDER PARAGRAPH (1) OF THIS SUBSECTION, THE GARNISHEE MAY NOT BE HELD LIABLE TO THE JUDGMENT CREDITOR OR TO ANY PERSON NAMED ON THE ACCOUNT FOR WRONGFUL DISHONOR OR FOR ANY OTHER CLAIM RELATING TO THE GARNISHMENT.[8] "

The bill was passed by both Senate and House in that form.

■ The amendments to H.B. 1027 from the time it passed the House until its final enactment furnish evidence of the legislative intent. Under the House version, all joint accounts of a husband and wife would have been exempt from attachment by a judgment creditor of either. The Senate version, on the other hand, would have rendered all joint accounts subject to garnishment by a judgment creditor of any one of the joint owners except that it exempted those joint accounts which were in trust form. The conference committee resolved the conflict between the two versions exempting from garnishment those joint accounts held by husband and wife which were opened prior to the date of the judgment giving rise to the garnishment. At the same time the conference committee distinguished between joint

---

**8.** The underlining indicates the amendments to H.B. 1027 as originally introduced. ~~Strike-outs~~ indicate matter stricken from the originally introduced bill by House amendments. Bold script denotes the conference committee amendments.

accounts and those which were created in trust form. Thus, where an attachment is based on a judgment entered prior to the opening of the account, we discern the legislative intention to limit the garnishment of joint accounts of husband and wife by a judgment creditor of either to those accounts which are not in trust form.

Finally, we reject the notion that Ch. 818 of the Acts of 1989 was intended to abrogate the well established rule of *Fairfax v. Savings Bank of Baltimore, supra,* which was grounded upon the validity of a trust established in a bank account recognized in *Milholland v. Whalen, supra.* In contrast, we observe that the General Assembly enacted Ch. 578 of the Acts of 1992, amending various sections of the Financial Institutions Article, to address comprehensively the classification and effect of multi-party accounts in financial institutions in this State. Since many of the provisions of that act changed the common law of this State, the General Assembly provided in § 2 of Ch. 578 that it:

> "[I]s intended to alter the common law, including *Whalen v. Milholland,* 89 Md. 199, 43 A. 45 (1899), *Milholland v. Whalen,* 89 Md. 212, 43 A. 43 (1899) and their progeny, as it applies to all deposit accounts in financial institutions that are established in the name of one or more parties, whether or not in trust, or with survivorship rights, or with payable on death rights."

### III.

 We conclude that the account opened by the Mickas at Maryland National Bank was in trust form within the meaning of *Milholland v. Whalen, supra.* The account agreement provided the recognized entry which "unexplained is a sufficient declaration of trust, because it indicates an intention to establish a trust." *Id.* at 216, 43 A. at 44. Furthermore, Mr. Micka testified at trial of his intention to open an account for the use of both him and his wife while protecting the deposit from attachment by his creditors. In doing so the Mickas committed no fraud upon Ms.

Pearce since they were depositing proceeds of the sale of tenants by the entireties property, which had been protected from Mr. Micka's creditors, into another form of jointly owned property which was also protected from his creditors. Ms. Pearce presented no evidence at trial to rebut the presumption of a trust as required by *Milholland.*

We further conclude that the Mickas' account met the description of a trust account set forth in § 11–603(b) of the Courts and Judicial Proceedings Article which provides in part that "[a] garnishment against property held ... by one party in trust for that party and another party or parties, is not valid unless all of the parties are judgment debtors." Mr. and Mrs. Micka held the account jointly, subject to the order of either, in trust for one another. We hold that their account was not subject to garnishment by a judgment creditor of Mr. Micka.

JUDGMENT REVERSED; COSTS TO BE PAID BY THE APPELLEE